THE STATE OF KANSAS, *ex rel.* W. B. PLEASANT, *as County Attorney, etc., Appellant,* v. THE CITY OF OTTAWA *et al., Appellees.*

No. 16,866.

SYLLABUS BY THE COURT.

MUNICIPAL CORPORATIONS—*Eight-hour Labor Law.* Section 1 of chapter 114 of the Laws of 1891 (Gen. Stat. 1909, § 4643), providing that eight hours shall constitute a day's work for all laborers, workmen, mechanics or other persons employed on behalf of any city of the state, applies to the engineers and firemen who operate the water and electric-light plant of the city of Ottawa.

Appeal from Franklin district court.   Opinion filed February 11, 1911.   Reversed.

*Fred S. Jackson,* attorney-general, *John Marshall,* assistant attorney-general, *Charles D. Shukers,* special assistant attorney-general, and *W. B. Pleasant,* county attorney, for the appellant.

*F. A. Waddle,* for the appellees.

The opinion of the court was delivered by

BURCH, J.:   The action was brought to oust the city from exercising the power and franchise of requiring the engineers and firemen at the city water and light plant to work more than eight hours per day.   Find-

ings of fact and conclusions of law were stated separately, and those which are now material follow:

"FINDINGS OF FACT.

"(4) It is necessary in the operation of this plant that one of the pumps be operated continuously, and for the last two years the plan has been to operate one pump continuously for about two weeks, and then the other for the same period of time. The same is true with reference to the dynamos, it being necessary to operate one continuously. For the past two years, and now, with the exception of about three months in midwinter, the fuel used for the operation of the steam engine, as also for the steam pumps, is natural gas. During the said three months the fuel used was coal, and the same arrangement is likely to continue. For about two years last past, and now, the plant has been operated by two shifts of men, a first engineer and fireman on duty from six o'clock in the morning till six o'clock at night, and a second engineer with a fireman, who is on duty from six o'clock in the evening until six o'clock in the morning. In the event of any extra labor necessitated by breakage, when other service is required, extra men are furnished by the city or assist in making repairs.

"(5) On December 26, 1908, the city council enacted an ordinance amending section 1 of a previous ordinance, which last ordinance is No. 742, and is made a part of these findings. It would appear from the evidence, however, that the city has wholly disregarded this ordinance, as the evidence shows that in the employment of the men for the operation of the plant it has employed by the month as follows: A first engineer at $85 per month; a first fireman at $50 per month; a second engineer at $70 per month; a second fireman at $45 per month. The evidence does not disclose the wages paid other employees, neither does it disclose what the current rate of wages was in this locality for any of the time or times herein mentioned. In the event that any of the city employees lost time, if the lost time was less than one month, one-thirtieth of a month's wages was deducted for each day lost.

"(6) The evidence discloses that the first engineer who has been employed by the city was a man of sufficient knowledge of machinery to operate the engines.

If any part of the machinery got out of repair, he repaired the same; if slight repairs were necessary, he did this work alone; if any heavy work was required, he had other helpers. At night, before leaving his work, he swept the floor of the engine room. He kept the pumps packed, a work that can be performed by any man of ordinary intelligence. He kept oiled such of the machinery as did not have self-oilers. By a mechanical device, he increased or decreased the speed of the engine as necessity might require, and during the twelve hours he was on duty the time consumed in his employment that could be called mechanical or laborious work did not exceed five hours out of the twelve on an average; the balance of the time was occupied in watching the machinery and keeping a general oversight of the plant. The work of the second engineer was very similar to that of the first engineer, except that he was not required to keep the machinery in repair, and hence a larger portion of his time was spent in a general oversight of the plant. [To which plaintiff objects and excepts.]

"(7) The fireman employed during the daytime, and when the fuel used was natural gas, was required to adjust his fire by means of a mechanical device upon the gas burner, throw the levers that controlled the lights of the city, of which levers there were three or four, brush off the weir once a day, which required, perhaps, thirty minutes of time, see that the iron and alum were placed in the purifying boxes, which required, ordinarily, not to exceed an hour and a half during the day; perhaps twice the length of time if the water in the river was muddy. In the event of a fire he had to see that the second pump was started, and at the close of the day sweep out the boiler room. In all, the work that he performed that could be called 'labor' did not exceed four hours of the twelve, during the time that natural gas was used for fuel. During the time that coal was used for fuel he had the work above referred to to perform, as well as to wheel in coal and place the same in the furnaces. During these months his work could be called labor during the entire twelve hours, although there were still intermissions when he was not required to work. The fireman on the night shift had much the same work to perform as the fireman of the day shift, except that he did not have to

clean the weir. [To which plaintiff objects and excepts.]

"It does not appear that the workmen have ever made any complaint or found any fault with their employment, and this action was brought by the commissioner of labor of this state.

### "CONCLUSIONS OF LAW.

" (1) That in the employment of first and second engineers defendants have not violated and are not violating any law of the state, and that as to such engineers the plaintiff is not entitled to the relief demanded, or any part thereof.

" (2) That in the employment of first and second firemen the defendants have not violated any law of this state during such time as natural gas was used for fuel.

" (3) During such time as the defendants used coal for fuel and required or permitted the firemen to work twelve hours per day such employment was in violation of law.

" (4) Judgment should be awarded in favor of the plaintiff and against all and each of the defendants, enjoining all of them and each of them from requiring or permitting their firemen at the water and electric plant to work more than eight hours out of each twenty-four hours during such time as coal is used as fuel, as and for a legal day's work, and that each party hereto pay the costs that it has made, respectively."

Judgment was rendered according to the conclusions of law, and the state appeals.

The statute governing the subject is section 1 of chapter 114 of the Laws of 1891 (Gen. Stat. 1909, § 4643), which reads in part as follows:

"That eight hours shall constitute a day's work for all laborers, workmen, mechanics or other persons now employed or who may hereafter be employed by or on behalf of the state of Kansas, or by or on behalf of any county, city, township or other municipality of said state, except in cases of extraordinary emergency which may arise in time of war or in cases where it may be necessary to work more than eight hours per calendar day for the protection of property or human life; provided, that in all such cases the laborer, workmen, mechanics or other persons so employed and

working to exceed eight hours per calendar day shall be paid on the basis of eight hours constituting a day's work."

It is not necessary to discuss at length the meaning of the terms "laborer," "workman," and "mechanic." The ordinary dictionary definitions were doubtless in the legislative mind. The words "other persons" do not of course refer to the identical persons already specifically named. If they should they would be meaningless. Under the doctrine of *ejusdem generis* they mean others like those enumerated. Therefore they may include workmen with special training equal to those who have learned a trade and skill equal to those who work with tools in the constructive shaping or application of material, but who are not strictly artisans. Under the title "Workman" Webster's New International Dictionary discusses the differences in meaning of the words "workman," "laborer," "artisan," "artificer," "mechanic," and "craftsman," as follows:

"WORKMAN is the general term; it frequently applies to one who does relatively skilled work, as contrasted with a LABORER, whose work demands strength or exertion rather than skill; an ARTISAN as here compared (see ARTIST) is esp. one who is employed in an industrial or mechanic art or trade; MECHANIC, once synonymous with *artisan,* is now commonly restricted to a workman who is skilled in constructing, repairing or using machinery; a CRAFTSMAN is one who practices a handicraft; ARTIFICER commonly implies power of contrivance or adaptation in the exercise of one's craft."

Just when "mechanics" became thus differentiated from "artisans" is not material. The "other persons" mentioned in the statute, of the same grade and class as "mechanics" in the sense of "artisans," clearly include persons who work about, attend to, repair and operate machinery, as the engineers and firemen at the Ottawa water and light plant do.

The State v. Ottawa.

, The statute makes it unlawful to require or permit the employees indicated to work more than eight hours per day, and punishes persons guilty of violating the act by fine or imprisonment, or both. In the case of *The State, ex rel., v. Martindale,* 47 Kan. 147, it was said that the statute is penal in nature and can not be extended by construction. In the opinion of the writer it is improper to characterize the statute as penal. The purpose is purely remedial. It is to relieve laborers, workmen, mechanics and similar employees from the pressure of economic conditions which compel them to work beyond just limits of time and endurance. It is a human life, health and welfare statute, to be given a beneficial interpretation for the public good. Of course it does not apply to cases not within the contemplation of the legislature, but the language used should be interpreted liberally to promote the true legislative purpose, notwithstanding the fact that a violation of the act is punishable as a misdemeanor. However this may be, the act is not extended beyond its terms by the interpretation which has been adopted. A complete list of the persons embraced was not attempted. Three general groups, of a popularly understood character, were named. Then all other workmen of like kind were expressly included by the term "other persons." Officers are excluded by the use of the word "employed," an office being distinguished from an employment in that it implies tenure, duration, emolument and duty; and in the case cited employees of the penitentiary were held to be excluded because of another statute governing their service. The opinion closes, however, with the following observations:

"It was urged upon the argument on behalf of the state that if chapter 114 had no application to the officers and employees in the penitentiary, or in the charitable institutions of the state, its provisions would scarcely have any operation. This is not correct, because, if the statute is constitutional, it will apply to

laborers, workmen, mechanics or other persons employed by or on behalf of the state, in many cases outside of the penitentiary and the charitable institutions, and also to many of the employees of counties, cities and townships of the state." (47 Kan. 150.)

The district court seemed to regard the amount of time consumed in actual use of the hands as controlling. Such time was estimated to be, for the first engineer, five hours per day; for the second engineer, something less; and for the firemen, four hours per day, except when coal was used. The time of these men, however, was not divided into uniform periods of manual labor and supervision. As the evidence shows, and as everyone knows, manipulation and oversight alternate for irregular periods with varying frequency. For example, a fireman testified as follows in reference to regulating the supply of gas to the burners:

"It is done by pulling the burners out and pushing them in. The burner is loose at one end and there is a piece that slips inside of the burner, and this piece is hollow, and as you push it in it closes the opening and lets more gas in, and when you pull it out it opens wide and shuts off the gas—reduces it. It is slipped in and out by hand. That regulates the burner by pushing it in and out; when you push it in you get more air and maybe in three minutes you have to pull it out and maybe in two minutes, and there are times again when you wouldn't have to do anything for twenty or thirty minutes."

The same is true concerning the regulation of the pumps supplying the boilers with water, the regulation of the voltage as electric lights are turned on and off by consumers, and other work about the plant. Fires, accidents, breakdowns and other fortuities intervene, so that, everything considered, the employment is in fact a compound of manipulation and oversight. All of it is work, one-half or more is strictly manual, and each employee is obliged to do some heavy work. Under these circumstances the court concludes that the service falls within the statute.

An argument is made that because these employees are paid by the month the statute has not been vioalted. The principal authorities cited are Exodus, Deuteronomy and Leviticus. Much as it respects the laws referred to, the court feels that it is bound by the act of the Kansas legislature regulating labor under the sociological conditions existing in this state. The statute specifies laborers, workmen, mechanics and employees of like kind. The persons intended are characterized by the kind of work they do rather than by the incidental fact of how often wages are paid. The statute can not be evaded by calling compensation "salary" and making it payable at long intervals.

The judgment of the district court is reversed so far as it is unfavorable to the state, and the cause is remanded with instructions to render judgment in accordance with the views hereinbefore expressed.