Argued January 30, decided February 17, 1914.

## ALBEE *v.* WEINBERGER.[*]

(138 Pac. 859.)

**Master and Servant—Eight Hour Law—"Laborer."**

1. A policeman or fireman, required by municipal law to take an oath of office, and not subject to removal at the pleasure of the appointing power, but only in accordance with the civil service rules, is an officer, and not a "laborer," within the eight hour law for laborers employed by the state or its auxiliaries (Laws 1913, c. 61).

**Master and Servant—Eight Hour Law—Length of Daily Service.**

2. Within Laws of 1913, Chapter 61, providing that no person employed by the state or its auxiliaries shall be required to labor more than eight hours a day, except in cases of emergency, firemen who,

---

[*]On the question what employers are within statute limiting hours of labor, see note in 42 L. R. A. (N. S.) 1031.     REPORTER.

though on duty for a longer time, are not in active service for eight hours a day, except in cases of emergency, are not required to labor in excess of the time allowed.

**Master and Servant—Eight Hour Law—Length of Daily Service.**

3. Policemen working in three shifts of eight hours each, except in cases of emergency, when they may be called upon for additional service, are not required to work in excess of the time allowed by the eight hour law for employees of the state and its auxiliaries (Laws 1913, c. 61), which authorizes the additional requirement of service where the public necessity or emergency requires it.

[As to criminal liability of municipality for violation of statute regulating hours of labor, see note in Ann. Cas. 1913E, 308.]

Original proceeding in Supreme Court.

. Statement by MR. JUSTICE MOORE.

This is an original application to this court by H. R. Albee, as mayor of Portland, to be released from custody. The facts set forth in the petition for a writ of *habeas corpus.* are, in effect, that two criminal complaints were filed in the District Court of Multnomah County, Oregon, for the district of Portland, charging the petitioner, H. R. Albee, as mayor of that city, who had authority over and control of firemen and policemen engaged therein, with violating the provisions of Chapter 61, General Laws of Oregon, 1913, in that he permitted and required a designated fireman and a specified policeman to labor in his several department more than eight hours in one day, when there was no emergency demanding the performance of such extra service. Based on these charges, warrants of arrest were issued, pursuant to which the defendant, A. Weinberger, a constable, apprehended the petitioner, who instituted these proceedings for the purpose stated. The writ prayed for was issued, whereupon counsel for the respective parties stipulated that a statement of facts to which they had subscribed their names might be treated as the return of the constable to the written precept served upon him. A demurrer to such statement puts in issue the questions of law upon which the cause was argued and submitted. The

statement of facts referred to substantially shows that, pursuant to the provisions of the charter of Portland, adopted May 3, 1913, the petitioner, as mayor, was appointed commissioner of the department of public safety, which embraces the fire and police departments of that city. All officers and members of the fire department are subject to civil service rules, and, before entering upon a performance of the service required of them, they must take and subscribe to an oath faithfully to perform the duties devolving upon them. In cases of great conflagration other necessary temporary employees may be appointed to which the civil service rules are not applicable. Each fireman is granted a leave of absence of one day in eight, and is also given a vacation of 15 days each year, but all other times he must respond to fire-alarms when given. During every day he is allowed three hours for meals, in taking which he must never go more than 100 feet from his engine-house. In that building he occupies a bed, sleeping in his overshirt and underclothing, and leaving beside the couch his trousers and boots, which he rapidly dons when a proper alarm is sounded. At the fire station bathing facilities are supplied, but if a fireman take advantage thereof, except during the hours allowed for meals, or when off duty, he is liable to be disciplined in case he is unable to go with his engine to a fire. Such subjection to the rule, however, rarely occurs, since the fireman's wearing apparel is so placed beside the bathtub when he occupies it that he can put on his garments and boots in time to respond to the call. Two watches of six hours each, commencing at 6 in the morning, are maintained during each period by two firemen, one of whom is engaged in active duty about the station, while the other is observing the telephone and signals for fire alarms. For the same purpose three watches of four

hours each, beginning at 6 in the evening, are also kept, pending each division of time, by one fireman. At the end of each vigil the guard is relieved.

In Portland there are 31 fire companies, three have 11 men each, one has 10, and the others have from 7 to 9, while a fire boat has 20, the total force being about 350, but, as each fireman is allowed one day off in 8, the working force probably does not exceed 260 firemen. Two or three men, depending upon the number in each company, go at a time to their meals, who returning, another like number take their repasts, and so on until all have been served. In companies having seven men, only one can be spared for each of the day watches, who must also maintain the fires at the station and keep the steam pressure in the engine up to the required standard.

The man who drives a team which draws a fire engine or other mechanical or chemical appliance has the exclusive care of the horses kept for that purpose. He must feed them at 6 o'clock in the morning, and is allowed 2¾ hours in which to curry them and to clean their stalls. At 11 A. M. he must again feed the team. Every day, regardless of the condition of the weather, he is obliged to exercise the horses two hours under saddle, or one hour with fire apparatus, and when he returns, if the animals are wet, they must be blanketed. At 5 in the evening the horses must be fed and bedded for the night.

It is the sole duty of the engineer to keep his engine in proper repair, and he is responsible for its efficiency. In maintaining its appearance, however, he has the assistance of a stoker to do the cleaning and polishing.

The work about the station is performed by different members of the force. Thus one man has the care of the harness, and burnishes the brasswork about the

building, another has charge of the dormitory, while another keeps the engine-house clean and sanitary.

Though none of the firemen are engaged in a continuous eight hour service, all the labor referred to, except the care of the horses, and maintaining the watches, must be performed between 7 and 9 A. M. The hose and apparatus, however, are never allowed to become slovenly. Occasionally an odd job about the station, when such temporary work becomes necessary, is apportioned to one or more of the firemen. Thus in returning from a fire the wet hose that has been used must be dried, other hose substituted, and a new fire laid in the engine.

In the electrical division of the fire department, linemen work eight hours, operators, eight hour shifts, and plumbers and shopmen, eight hours. At a recent fire in Portland 25 companies were constantly engaged on an average of 18 hours. The firemen are at all times liable to be called to extinguish a fire, and must respond to the demand.

The statement of facts further shows the number of firemen engaged in operating the several engines, the sum of fire-alarms severally received from January 1, 1913, to November 30th of that year, and the time occupied in going to, remaining at, and returning from, fires, from which narration it appears that the average time occupied by each company in such service during the entire 11 months mentioned was 67 hours and 18 minutes.

It further appears that the officers and members of the police department are appointed pursuant to examination of applicants who have been listed for that purpose. They are required to take and subscribe to an oath of office, and may remain in the service until they resign or are removed for cause. Any officer or member whose discharge was not in good faith for the

purpose of improving the service may be reinstated after investigation by the Civil Service Commission. Members of the police department are required to be on duty in three shifts of eight hours each. They are allowed a leave of absence of two days each month, and are given an annual vacation of 15 days without diminution of salary. When off duty they are subject to emergency calls in event of riots or unusual disturbances, and cannot leave the city without the consent of the chief of police, except during the regular annual vacation. A policeman is a peace officer to whom a warrant of arrest may be directed, and when such a writ is executed he must obey its commands: Section 1745, L. O. L.

WRIT GRANTED: PETITIONER DISCHARGED.

For petitioner there was a brief, with oral arguments by *Mr. Walter P. La Roche,* City Attorney, and *Mr. Lyman E. Latourette,* Deputy City Attorney.

For defendant there was a brief, with oral arguments by *Mr. Andrew M. Crawford,* Attorney General, and *Mr. James W. Crawford,* Assistant Attorney General.

There was a brief with oral arguments by *Mr. Charles E. S. Wood* and *Mr. William D. Fenton,* amici curiae.

MR. JUSTICE MOORE delivered the opinion of the court.

1. Based on the foregoing statement, the truth of which is admitted, it is contended, by counsel for the mayor, that the facts thus detailed are not sufficient in law to prove a violation of the provisions of the statute alleged to have been disobeyed, for that the classes of persons referred to are officers of the City of Port-

land; that neither firemen nor policemen labor more than eight hours per day, except on rare occasions in cases of emergency, when no other competent official is available, and that, such being the case, the petitioner is entitled to be discharged.

The statute in question (Chapter 61, Gen. Laws Or. 1913), as far as thought to be material herein, reads:

Section 4. ''In all cases where labor is employed by the state, county, school district, municipality, or municipal corporation, or subdivision, either directly or through another, as a contractor, no person shall be required or permitted to labor more than eight hours in any one day, or forty-eight hours in any one week, except in cases of necessity, emergency, or where public policy absolutely requires it, in which event the person or persons so employed for excessive hours shall receive double pay for the overtime so employed; and no emergency, necessity, or public policy shall be presumed to exist when other labor of like skill and efficiency which has not been employed full time is available.''

Section 5. ''Eight hours shall constitute a day's labor in all cases where the state, county, school district, or any municipality, municipal corporation or subdivision is the employer of labor, either directly or indirectly, by contract with another.''

Section 6. ''All contractors, subcontractors, or agents, or persons whatsoever in authority or in charge, who shall violate the provisions of this act as to the hours of employment of labor as herein provided, shall be deemed guilty of a misdemeanor and upon conviction shall be fined,'' etc.

Giving to the term ''laborer,'' as used in the enactment quoted, the most extensive definition applicable, it is not believed that a fireman or a policeman, employed by the City of Portland, or the services which he is ordinarily required to perform for it, makes either a laborer within the meaning of that word. It will be remembered that by law of that municipality

69 Or.—22

all officers and members of the fire and police departments are required to take and subscribe their names to an oath of office. In *Collins* v. *Mayor etc.,* 3 Hun, 680, the common council of New York passed a resolution authorizing the appointment of an assistant clerk of the board of aldermen. Pursuant to such order the plaintiff was duly appointed to the position, took the official oath, entered upon a discharge of the duties, and, payment of his compensation having been denied, brought an action to recover the salary, and it was held that he was entitled thereto, the court saying: "We see no reason to doubt that the plaintiff was an officer. * * He was required by ordinance to take, and did take, the official oath. * * Probably the true test to distinguish officers from simple servants or employees, is in the obligation to take the oath prescribed by law." The same conclusion seems to have been inferentially reached in the case of *David* v. *Portland Water Committee,* 14 Or. 98 (12 Pac. 174), where it was ruled that the persons constituting the water committee of Portland were agents of the city and not officers, because they were not required to take an oath of office: See, also, upon this subject, *State ex rel.* v. *George,* 22 Or. 142 (29 Pac. 356, 29 Am. St. Rep. 586, 16 L. R. A. 737).

The firemen and policemen of the City of Portland, when once selected, are not subject to dismissal upon the whim of the appointing power, or at the command of some political boss. Governed by the civil service rules, a member of the fire or police department can hold his public position as long as he pleases, provided his physical ability continues, and he remains faithful to the trust. The appointing power being thus unable permanently to discharge a fireman or a policeman, he is neither a servant nor an employee, but, having taken an oath faithfully to perform the duties de-

volving upon him, he is an officer, and therefore not a laborer within the meaning of Chapter 61, Gen. Laws Or. 1913.

2. The conclusion thus reached necessarily determines these proceedings, but if it were conceded that the members of the fire and police departments were unquestionably laborers and not officers, which admission is not harbored, the facts hereinbefore stated do not, in our opinion, show a violation of any of the provisions of the statute in question. An examination of that enactment will convince any disinterested person that it was designed to conserve the energy of mankind, and thus to secure the best application of human endeavor to the accomplishment of some beneficial purpose, with a view to prolong the life of the employee and thereby to promote his welfare and happiness, and that a persistent and constant service under the directions of a superior, in any branch of activity of more than eight hours in any one calendar day, is detrimental to the laborer and unremunerative to the employer.

The services required to be performed by the firemen, though arduous and dangerous at times, requiring vigor and courage, the work so demanded is not constant; and, while the members of the fire department must at all times be ready to respond to alarms whenever given, they are not subject to active toil 8 hours in any 24, except in cases of emergency which the statute recognizes as a deviation from the prescribed rule.

3. Policemen, however, must, during the time limited for a performance of their duties, persistently and constantly patrol their beats, except when entering a building in the interest of the service, or answering an inquiry or protecting, delivering, or committing a person when arrested. While on duty they are not

permitted a moment's rest, but are actively engaged in the execution of their work as guardians of the peace and safety of the community. In the case at bar, as the members of the police department are divided into three shifts of eight hours each, the changes of the watch relieve those who have been on duty from performing more than the prescribed number of hours of service, except in cases of emergency.

Therefore, on both grounds referred to here, there has been no violation of the provisions of the statute. It follows from these considerations that the petitioner should be discharged; and it is so ordered.

Writ Granted: Petitioner Discharged.