[Civil No. 2610. Filed December 23, 1927.]

[262 Pac. 489.]

ARIZONA SUPERIOR MINING COMPANY, a Corporation, Appellant, v. JOHN CARTER ANDERSON, Appellee.

Mr. James E. Nelson and Mr. E. S. Clark, for Appellant.

Messrs. Kingan, Campbell, Conner & Darnell, for Appellee.

ROSS, C. J.—John Carter Anderson sued the Arizona Superior Mining Company for the reasonable value of his services in examining and reporting on certain mining properties of the company, situated in Pinal county. The suit was brought in the superior court of Pima county, in which county plaintiff resided and maintained an office as mining engineer. The defendant is a domestic corporation with its principal office in Phoenix, Maricopa county. The contract of employment was entered into through correspondence and, if not conceded to have been, was unquestionably made in Pima county, since the offer of employment was received through the mails at Tucson, Pima county, and accepted by letter from that point. The examination of the properties and the report thereon were made at the mines in Pinal county.

Before filing its answer the defendant, upon the ground that it was sued in the wrong county, duly filed its motion to have the cause transferred to the

superior court of Maricopa county (the site of its principal office), setting forth therein the above facts as to diversity of residence of the parties and location of mining property. Other grounds urged in the motion for change of venue were either unfounded in fact or were immaterial. The motion to transfer cause was opposed and upon hearing denied.

The defense, as far as the hearing here is concerned, was a denial that plaintiff's services were worth the sum of $750, and expenses of $27.29, amount sued for, or any sum at all, and an averment that plaintiff was not a competent engineer and not possessed of the necessary skill to perform the services required, which facts were at the time of his employment unknown to defendant.

The case was tried to a jury and resulted in a verdict and judgment for plaintiff.

The refusal to transfer the cause from Pima county to Maricopa county is assigned as error. The plaintiff brought the action in Pima county, and the court retained jurisdiction there on the theory that "the cause of action, or a part thereof, arose" in such county. The venue of suits is provided for in paragraph 394, Civil Code of 1913. In such paragraph are enumerated eighteen situations conferring jurisdiction to sue a defendant out of the county of his residence, such as where he resides out of the state, or his residence is unknown, or where he is a transient, etc. The only specific mention of jurisdiction of suits against corporations is stated in such paragraph, and in the eighteenth subdivision thereof, as follows:

"394. No person shall be sued out of the county in which he resides, except in the following cases: . . .

"(18) Suits against railroad companies, insurance companies, telegraph or telephone companies, joint-stock companies and other corporations may be

brought in any county in which the cause of action, or a part thereof, arose, or in the county in which the defendant has an agent or representative or owns any property or conducts any business.''

Defendant had no agent or representative and owned no property and conducted no business in Pima county; and if the courts of that county possessed jurisdiction of the cause sued on, it is because the defendant is a corporation, and because the cause of action, or a part thereof, arose therein. It is the contention of defendant that the cause of action was the breach thereof by its refusal to pay for plaintiff's services, and that such breach occurred at the place of its performance, or, as stated in defendant's own words:

''The breach occurred, and is bound to occur, . . . at the place of performance, and the cause of action arose there, and could arise nowhere else.''

It is true that no suit could be maintained against defendant for the reasonable value of plaintiff's services until defendant refused to pay for such services, but is the breach the whole cause of action, or just a part of it? The foundation of the cause of action is the agreement of plaintiff to render services, and of the defendant to pay therefor. Without such agreement, expressed or implied, there could be no breach. Dissected, it would seem that the cause of action here consisted of the contract and its breach. If that be so, it arose in part in Pima county, where the contract was made, and in part in Maricopa county, where defendant refused to pay. It did not wholly arise in either county.

Subdivision 18, *supra*, is not the same as subdivision 24 of article 1830, volume 2, Vernon's Sayles' Texas Civil Statutes of 1914, but in one respect there is no difference. The authority to sue in the county ''in which the cause of action, or a part thereof arose'' is identical, and we think the right to main-

tain the action in Pima county depends upon the construction of that phrase. The Texas courts have many times considered this phrase of their statute. In *Mercantile Bank & Trust Co.* v. *Schuhart*, 115 Tex. 114, 277 S. W. 621, at page 623, the court said:

"A cause of action ordinarily consists of two distinct and separate elements, described by Mr. Pomeroy as being 'the primary right and duty of the parties respectively and the wrongful act or omission violating it.' In *Western Wool Commission Co.* v. *Hart* (Tex. Sup.), 20 S. W. 131, it is said (in respect to paragraph 24, art. 1830):

" 'The cause of action is that in which the plaintiff's remedy has its origin—the fact or facts giving him the right to bring the suit. . . . Those facts which show the plaintiff's primary right in the matter are as much a part of the cause of action, and are as necessary as a foundation for the suit, as are those facts showing a violation or invasion of his right, ordinarily termed a breach of the contract or covenant by the defendant.' "

The case of *Continental State Bank* v. *Mailander* (Tex. Civ. App.), 277 S. W. 232, was, in its facts, almost on all fours with the present case. The court there said:

"Subdivision 24 of article 1830 authorizes suits against private corporations to be brought 'in any county in which the cause of action, or a part thereof, arose.' The term 'cause of action' used in this section, as applied to a breach of contract, consists of the contract and its breach, and the right and the injury arising out of said contract and its breach."

In *Mangum* v. *Lane City Rice Milling Co.* (Tex. Civ. App.), 95 S. W. 605, the elements of a cause of action and its jurisdiction is well stated as follows:

"A cause of action consists of the right of the plaintiff, as well as of the injury to that right, and when the right arises from or is based upon a contract, such right comes into existence at the time

and place of the making of the contract, and it necessarily follows that a cause of action growing out of a breach of contract arises, or comes into existence, in part, at the place at which the contract was made."

Counsel for defendant have directed our attention to decisions holding jurisdiction to be as claimed by them, but in all such cases the language of the statute giving jurisdiction of the cause is different from the wording of our statute. In those statutes placing jurisdiction "where the cause of action accrued," as in Missouri, jurisdiction would not be given to the county where the contract was made, unless it was also there breached. In *Barnett* v. *Colonial Hotel Bldg. Co.,* 137 Mo. App. 636, 177 Mo. App. 477, 119 S. W. 471, the court discusses the distinction between the statute of that state and the Texas statute, and states that under the latter "the contractual obligation was as much a part of the cause of action as the breach," differing in that respect from many of the statutes of other states, some of which are reviewed. Aside from the compelling force of the language of the statute itself, in adopting it from another state, we took it with the construction theretofore placed upon it.

It is next argued that corporations of the character of defendant are not enumerated in subdivision 18 of paragraph 394, *supra,* and that, under the rule of *ejusdem generis,* the words "other corporations" following those named in such subdivision should be construed to include only those of the like kind or character. While the rule invoked is sound and often resorted to for the purpose of effectuating the evident purpose of statutes, we think in this case its use would subvert or defeat such purpose. The corporations named are not cognate nor of the same class. Most of them are public service corporations and engaged in business naturally extending into

more counties than one. These are railroad, insurance, telephone and telegraph companies. If the enumeration stopped with these, defendant's contention would not be without support, but these are followed by the phrase "joint-stock companies and other corporations." This last description is a complete departure from classification to generalization. Joint-stock companies, under our Constitution and laws, are corporations (*Reilly* v. *Clyne,* 27 Ariz. 432, 40 A. L. R. 1005, 234 Pac. 35), and as such can own and operate railroad, telephone and telegraph lines, and carry on insurance, but that such companies generally are engaged in other business ventures is certainly true. If, therefore, the words "other corporations" are to take on the meaning of those named, it means those corporations doing a public service, as also those engaged in all legitimate pursuits or enterprises. The corporations named not being of the same class, the general descriptions cannot, according to the rule of *ejusdem generis,* be held to describe any class of corporations.

"The doctrine of *ejusdem generis,* however, is only a rule of construction, to be applied as an aid in ascertaining the legislative intent, and does not control where it clearly appears from the statute as a whole that no such limitation was intended. Nor does the doctrine apply where the specific words of a statute signify subjects greatly different from one another, nor where the specific words embrace all objects of their class, so that the general words must bear a different meaning from the specific words or be meaningless." 36 Cyc. 1120–1122.

We are satisfied that a correct application of the law to the facts of this case was made by the lower court, and that no error was committed in the refusal to transfer the cause to Maricopa county.

We quote the next assignment:

"The lower court erred in admitting evidence in behalf of plaintiff, over defendant's objection."

Under this very general assignment the defendant argues that certain testimony of plaintiff, and of the following witnesses, was incompetent, and erroneously admitted over objections: W. F. Christmann, Bruce B. Ellis, E. A. Royce. The testimony of these witnesses was introduced to prove the value of plaintiff's services. To that end, plaintiff was permitted to state what his usual charge for work of like character was, and to state that his charges were based upon the responsibility that attached the moment he signed a report advising for or against development. It seems to us that the statement of the elements entering into the fee charged for this kind of work was proper, but what the witness usually charged others for like services is of a very doubtful character. If so, it was, under the circumstances, harmless, as there was ample testimony free from like objection as to the value of the particular services rendered.

Christmann was permitted to state that he had employed plaintiff to examine and report on some mining property, and that such report was unfavorable. We cannot see the relevancy of this testimony, but its innocuous character is so apparent that we think it could have done no harm.

Royce, after stating that he had followed mining in Arizona for twenty years, that he had procured examinations of mining properties, and was in a general way acquainted with the charges for such work, was permitted to state that plaintiff had reported on mines on one occasion for him and charged therefor $750, and to testify that the charge of $750 for the examination and report on defendant's mines was reasonable. This testimony is subject to the same criticism as that of plaintiff, but is, for the same reason, harmless.

Ellis testified he had followed mining engineering and detailed his experiences; that he was acquainted

with charges of engineers for examining and reporting on mines in Arizona. Then he was asked a hypothetical question—based upon a statement of plaintiff's examination of defendant's property—as to the value of his services. This was objected to on the ground that witness had not qualified. A number of witnesses testified as to the value of plaintiff's services, but because they had not been on the property and personally examined it defendant contends their testimony was incompetent. Perhaps an expert, who had gone upon the property and had there been given an explanation of the kind and character of examination made by plaintiff, could give testimony more readily convincing than one who had not had such opportunity, but testified after examining the report or after the facts were detailed to him. This distinction, however, would only go to the weight of the testimony.

In *Gila Valley, Globe & Northern R. Co.* v. *Lyon,* 9 Ariz. 218, 80 Pac. 337, the rule is stated as follows (Syl.):

"The question of the competency of an expert witness is a matter resting in the sound discretion of the court, and its exercise will not be reviewed but for abuse."

An examination of the *voir dires* of these expert witnesses leads us to conclude that there was no abuse of discretion in permitting them to testify as to the value of plaintiff's services.

Exception is taken to the following instruction:

"You are instructed that when one represents himself as a workman he impliedly covenants that he will perform skillfully the work upon which he is engaged, and, if because of a lack of skill his work is of no value, he is not entitled to recover for his labor. And so, if you believe from the evidence in this case that plaintiff's work performed—I say, if you believe from the evidence in this case that the plaintiff's work performed for the defendant was

unskillfully done, and if on account of it being unskillfully done was without value—you must find for the defendant. The burden of proof is on the defendant, however, to show by a preponderance of the evidence that the work was unskillfully done, and that as a result of such unskillfulness it was without value.''

It is said that the last sentence of this instruction is an incorrect statement of the law; that "one who is employed by reason of special skill impliedly covenants that he possesses such skill, and the burden never shifts." The substantive law is as contended (18 R. C. L. 502, § 13), but it does not follow that the procedural law is as stated. The defendant's answer alleged a breach of the implied covenant of skill, or, in other words, it was charged that plaintiff had breached his contract. *Glennon* v. *Lebanon Mfg. Co.*, 140 Pa. 594, 12 L. R. A. 321, 21 Atl. 429. Defendant admitted the contract was made as alleged in the complaint, and that plaintiff examined and reported on the mines as agreed, but sought to avoid payment for services because they were unskillfully performed and were valueless to it. It is said in 13 C. J. 764, § 958:

'' . . . If an affirmative contract to pay money or to perform some duty is proved, it is then incumbent on defendant to prove payment, performance, or tender, or a sufficient excuse therefrom.''

We think the rule as applied to professional services generally should control in an action by a mining engineer, for services rendered. The rule with reference to physicians and surgeons, and we think it is the general rule, is stated in *State* v. *Housekeeper*, 70 Md. 162, 14 Am. St. Rep. 340, 2 L. R. A. 587, 16 Atl. 382, as follows:

"It was the duty of the professional men to exercise ordinary care and skill, and, this being a duty imposed by law, it will be presumed that the operation was carefully and skillfully performed, in the

absence of proof to the contrary. As all persons are presumed to have duly performed any duty imposed on them, negligence cannot be presumed, but must be affirmatively proved. Best, Pres. 68; *Jacksonville St. Ry. Co.* v. *Chappell,* 21 Fla. 175, [Id., 22 Fla. 616], 1 South. 10. This principle is especially applicable in suits against physicians and surgeons for injuries sustained by reason of alleged unskillful and careless treatment. The burden of proof is on the plaintiff to show a want of proper knowledge and skill.''

See, also, 21 R. C. L. 406, § 49.

The following expression is extracted from the court's instructions: ''You are instructed, gentlemen of the jury, that a mining engineer when retained by another is entitled to fair and reasonable compensation for professional services rendered, and he may maintain an action therefor''—with the criticism that it ''is misleading, and tends to convey to the minds of the jury the idea that appellee in this case, simply by reason of the fact that he is or claims to be a mining engineer is entitled to receive compensation regardless of its value.'' If what is quoted were all of the instruction defendant's complaint would be well founded, but it is a sentence snatched from a complete and full set of instructions covering every phase of the case as made by the pleadings and proof. The jury was expressly told, that, if defendant established its defense of incompetency to do the work through lack of skill or because of carelessness, and the work was valueless, no recovery could be had.

Being satisfied that the venue was properly placed in Pima county, and that no prejudicial error was committed in the course of the trial, the judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.