208 P.2d 1147

**CITY OF PHOENIX v. YATES et al.**

**No. 5009.**

Supreme Court of Arizona.

May 2, 1949.

Rehearing Denied May 31, 1949.

Jack Choisser, City Atty., and Howard W. Gibbons, Asst. City Atty., both of Phoenix, for appellant.

Laney & Laney, of Phoenix, for appellee.

De CONCINI, Justice.

Eighty-six employees, including one assistant chief, one deputy chief, five alarm operators, 24 captains, 21 engineers, and 34 hosemen, of the Fire Department of the City of Phoenix filed suit against the latter for overtime or additional compensation for the year May 1, 1944, to April

30, 1945, both inclusive. Each employee had received a certain monthly salary from the defendant, depending upon his classification under the Civil Service System of the City of Phoenix. Each was required to work what was called the "double platoon" system, consisting of 24 hours on duty and 24 hours off duty. In addition, because of the status of war and consequent man-power shortage, each employee worked certain extra shifts of 12 hours each, called "Victory" shifts, for which each employee was paid a proportionate additional amount to his salary. The firemen in their complaints alleged that each was entitled to extra pay on the basis of eight hours constituting a day's work, plus overtime pay for each hour in excess of eight hours a day. The rate of payment for the overtime was asked alternatively (1) at time and one-half on excess of regular monthly work over eight hours per day and on the whole of the Victory shifts; (2) at time and one-half on excess of regular monthly work over eight hours per day and on excess of Victory shifts over eight hours per day; (3) at straight time for all time over eight hours per day on both monthly work and Victory shifts; or (4) according to minimum monthly wage of $180 per month, plus straight time at same rate for time over eight hours per day.

The firemen based their claims on Art. 18, Sec. 1 of the Arizona Constitution as implemented by Sec. 56-101, A.C.A.1939, which provides that:

"Eight (8) hours, and no more, shall constitute a lawful day's work for any person doing manual or mechanical labor, employed by or on behalf of the state or any political subdivision thereof, except in an extraordinary emergency, in time of war, or for the protection of property or human life, in which case every person working in excess of eight (8) hours in any day shall be paid time and one-half for all time in excess of eight (8) hours."

By an amendment to their complaint on the date of the trial plaintiffs added Sec. 5 of Chapter XIX of the Charter of the City of Phoenix.

The case was heard by the court sitting without a jury. The record recites that evidence was taken and witnesses heard, but no transcript of the evidence was sent up to this court.

The court gave judgment for the plaintiffs, allowing recovery according to alternative (3) above, finding that the firemen were governed by the provisions of the city charter. It found that each of the plaintiffs, with the exception of the alarm operators, had worked the number of hours per day and the number of shifts as alleged in their amended complaints. It was further found that the excess of work above eight hours per day was due to an emergency within the meaning of the charter provision, and that the plaintiffs had not received payment for this overtime, but had been paid only one day's pay for each

12 hours of work. The court found the alarm operators had worked but eight hours per day and had been fully paid at the straight time rate.

 Defendant city appealed from the judgment and from the denial of its motion for a new trial. Appellant made three assignments of error, one of which is controlling here. That assignment was that the "Court erred in finding that appellees were entitled to judgment under the provisions of Section 5 of Chapter XIX of the Charter of the City of Phoenix reading as follows:

"That eight (8) hours and no more shall constitute a lawful day's work for all laborers, workmen, mechanics or other persons employed by or in behalf of the city, except in cases of emergency where it may be necessary to work more than eight (8) hours each calendar day for the protection of property or human life, provided that in all such cases the laborers, workmen, mechanics or other persons so employed in working to exceed eight (8) hours each calendar day shall be paid on the basis of eight (8) hours constituting a day's work; provided, further, that the minimum daily wage to be paid by the city for work done by its employes shall be at the rate of two (2) dollars; provided, further, that all contracts made by or on behalf of the city with any person, association or corporation for the performance of any work or the furnishing of any materials to the city, shall be deemed and considered as made upon the basis of eight (8) hours constituting a day's work; and provided, further, that no person not a citizen or a ward of the United States who has not declared his intention to become a citizen shall be employed upon or in connection with any city works or employment."

The defendant contends that city firemen do not come within the phrase "laborers, workmen, mechanics, or other persons" because neither the language nor the intent of the provision was calculated to include firemen. As an indication of intent the city quotes from two ordinances of the City of Phoenix. The first, Ordinance No. 714, passed in June 1924, provided that city firemen work the "double platoon" system. The second, Ordinance No. 715, passed April 4, 1933 as a referred measure, is the Civil Service law for the City of Phoenix. The latter ordinance provides, among other things, that employees may not be discharged or reduced in rank or compensation without cause or without an opportunity for a public hearing. Sec. 1092(12) of the Phoenix Municipal Code, 1939, page 116. While these two ordinances may cast light upon the intent of the charter provision, they must fall if they conflict with the charter. Paddock v. Brisbois, 35 Ariz. 214, 276 P. 325.

 In the interpretation of a statute, ordinance, constitution, or charter, the cardinal principle is to give full effect to the intent of the lawmaker. Mahoney v. Maricopa County, 49 Ariz. 479, 68 P.2d 694;

State v. Borah, 51 Ariz. 318, 76 P.2d 757, 115 A.L.R. 254; Garrison v. Luke, 52 Ariz. 50, 78 P.2d 1120; Webb v. Frohmiller, 52 Ariz. 128, 79 P.2d 510; In re Stark's Estate, 52 Ariz. 416, 82 P.2d 894; Millett v. Frohmiller, 66 Ariz. 339, 188 P.2d 457. In the absence of ambiguities the entire statute must be given its complete import with the presumption that the lawmaker had a definite purpose in mind in promulgating this particular statute. Each word, phrase, clause, and sentence must be given meaning so that no part will be void, inert, redundant, or trivial. In the words of Chancellor Kent:

"It is an established rule in the exposition of statutes, that the intention of the lawgiver is to be deduced from a view of the whole and of every part of a statute, taken and compared together. The real intention, when accurately ascertained, will always prevail over the literal sense of the terms. When the expression in a statute is special or particular, but the reason is general, the expression should be deemed general. Scire leges, non hoc est verba earum tenere sed vim ac potestam, and the reason and intention of the lawgiver will control the strict letter of the law, when the latter would lead to palpable injustice, contradiction, and absurdity. This was the doctrine of Modestinus, Scaevola, Paulus, and Ulpianus, the most illustrious commentators on the Roman law. When the words are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the objects and the remedy in view; and the intention is to be taken or presumed, according to what is consonant to reason and good discretion. These rules, by which the sages of the law, according to Plowden, have ever been guided in seeking for the intention of the legislature, are maxims of sound interpretation, which have been accumulated by the experience, and ratified by the approbation of the ages." 1 Kent's Commentaries, 14th Edition, 622.

The restriction of the hours of labor to eight hours a day except in cases of emergency has been found by numerous legislative bodies to be a salutary principle. Such a provision is found in our Constitution, Art. 18, Sec. 1. Sec. 56-101, A.C.A. 1939, quoted supra, applies the principle to "any person doing manual or mechanical labor" and the city charter, supra, to "laborers, workmen, mechanics, or other persons employed by or on behalf of the city." To have given the broadest coverage to the constitutional provision, both the statute and the charter should have read "all persons" for the Constitution says:

"Eight hours and no more, shall constitute a lawful day's work in all employment by, or on behalf of, the state or any political subdivision of the state. The legislature shall enact such laws as may be necessary to put this provision into effect, and shall prescribe proper penalties for any violations of said laws."

It will be noted that this constitutional provision is not self-executing and that neither the legislature nor the framers of the charter enacted laws which are as broad as this constitutional provision. In Arizona Eastern R. Co. v. Matthews, 20 Ariz. 282, 180 P. 159, 163, 7 A.L.R. 1149, we said:

"While the Legislature may not extend the constitutional provision so as to include subjects not within its purview or that conflict with it (Behringer v. Inspiration Consol. Copper Co., supra [17 Ariz. 232, 149 P. 1065]), it is well settled that the law-making body may or may not, as it chooses, pass laws putting into effect a constitutional provision, and if, in its efforts to give effect to a constitutional provision, the statute is not broad and comprehensive enough to cover all subjects that it might, we know of no reason why it should not be valid as far as it goes. So it is that, if other employees than those doing manual or mechanical labor might, under the Constitution, be granted the benefits of the act, it is the duty of the Legislature to so provide, and, until it does so, the beneficiaries are limited to those mentioned in the statute."

The problem is to determine what classes of city employees the framers of the charter intended to come within the limiting phrase. Resort may be had to two rules, or rather guides, in statutory interpretation. 2 Sutherland, Statutory Construction, 3rd Edition, Horack, 393 Sec. 4908. The first applies the maxim noscitur a sociis—if the legislative intent is not clear, then the meaning of the doubtful words may be determined by reference to their association with other associated words and phraess. Southern Pacific Co. v. Corporation Commission, 39 Ariz. 1, 3 P.2d 518. The second guide, a variation of the first, is ejusdem generis—"where general words follow the enumeration of particular classes of persons or things, the general words should be construed as applicable only to persons or things of the same general nature or class of those enumerated." 59 C.J. 981, Sec. 581; 28 C.J.S., page 1049; 50 Am.Jur. 244, Sec. 249; 2 Sutherland, Statutory Construction 3rd Edition, Horack, 395, Sec. 4909; 14 Words and Phrases, Perm.Ed., page 135; White v. Moore, 46 Ariz. 48, 46 P.2d 1077; State Board of Barber Examiners v. Walker, 67 Ariz. 156, 192 P.2d 723, 731; State v. Ash, 53 Ariz. 197, 87 P.2d 270; Arizona Superior Mining Co. v. Anderson, 33 Ariz. 64, 262 P. 489; Meyers v. Rosenzweig, 27 Ariz. 286, 232 P. 886; Conrad v. County of Maricopa, 40 Ariz. 390, 12 P.2d 613.

59 C.J. 982, Sec. 581, states the object of the rule:

"The rule is based on the obvious reason that if the legislature had intended the general words to be used in their unrestricted sense they would have made no mention of the particular classes. The words 'other' or 'any other' following an

enumeration of particular classes are therefore to be read as 'other such like' and to include only others of like kind or character."

■■■ The specific words indicate the class, and the general words extend the provisions to all persons or things within that class, although not specifically named. If the specific words exhaust the class, the general words must extend beyond the class or have no meaning at all. State ex rel. Conway v. Industrial Commission, 55 Ariz. 105, 99 P.2d 88; State ex rel. Bloedel-Donovan Lumber Mills v. Savidge, 144 Wash. 302, 258 P. 1. If the specific words do not denote the same class, ejusdem generis cannot apply. Arizona Superior Mining Co. v. Anderson, supra; 50 Am.Jur. 248, Sec. 250.

Webster's New International Dictionary, Second Edition, Unabridged, defines a laborer as "one who labors; specif.: (a) One who does physical labor; one who works at a toilsome occupation; esp., a person who does work that requires strength rather than skill, as distinguished from *artisans* and from the *professional* classes. (b) A person who performs labor of any kind is a worker." The same authority defines a mechanic as "one who practices any mechanic art; an artificer; an artisan," and a workman as "(1) a man employed for wages in labor, whether in tillage or manufactures, a workingman; often a skilled artificer or laborer." As synonyms for workman the following is quoted: "laborer, artisan, artificer, mechanic, craftsman. *Workman* is the general term; it frequently applies to one who does relatively skilled work as contrasted with a *laborer,* whose work demands strength or exertion rather than skill; an artisan, as here compared is especially one who is employed in an industrial or mechanical art or trade; *mechanic,* once synonymous with artisan, is now commonly restricted to a workman who is skilled in constructing, repairing, or using machinery; a craftsman is one who practices a handicraft; an *artificer* commonly employs power of contrivance or adaptation in the exercise of one's craft." Mack v. Boots, 29 Ariz. 116, 239 P. 794; State v. City of Ottawa, 84 Kan. 100, 113 P. 391; State v. Ash, 53 Ariz. 197, 87 P.2d 270.

These definitions plainly show that the class here enumerated was not exhaustive, since artisan, artificer, and craftsman are given as synonyms. To this class might be added "operator," "operative," "journeyman," "handicraftsman," "toiler." Each word envisions a different type of work.

Webster, supra, defines a fireman as "a member of a fire company," and a fire company as "a company of men organized for extinguishing fires." In 36 C.J.S., page 807, firemen are defined "those whose duty is to extinguish fires and to protect property and life therefrom." Behr v. Soth, 170 Minn. 278, 212 N.W. 461, 462. In 17 Words and Phrases, Perm.Ed., Pocket Supplement, "The term 'fireman' is defined

as a person engaged in the fighting and extinguishment of fires." City of Galveston v. Fredrickson, Tex.Civ.App., 174 S.W.2d 994–995. In a stipulation received in evidence at the trial the duties of the various members of the fire department are listed. For all the men involved the principal duty was the saving of lives and property from fire. Such a duty requires a special skill for which the men are trained, and the use of judgment in the successful completion of that duty. They are not engaged in the production of the world's goods, but rather in its preservation.

Numerous cases have treated the question of whether specific employees come under provisions similar to this. The majority have arisen under Workmen's Compensation Acts. Much depends upon the exact wording of the statute under scrutiny. An annotation in 10 A.L.R. 201 lists many cases. Most have held that firemen and policemen do not come under the acts because they are not employees, laborers or workmen within the legislative meaning. A further note in 81 A.L.R. 478, states "In the absence of an express provision for firemen and policemen, they are generally held not to be 'employees,' 'laborers,' 'workmen' within the meaning of workmen's compensation acts. This result has been reached in later cases." Cases to the contrary have generally been decided on a different set of facts, especially when the fireman was a volunteer. 43 C.J. 830, Sec. 1462, states "Firemen are not within the provisions of a statute limiting a day's work to eight hours where labor is performed for the state or municipality."

A number of the cases make a distinction between governmental official and employee, McDonald v. City of New Haven, 94 Conn. 403, 109 A. 176, 10 A.L.R. 193; Jackson v. Wilde, 52 Cal.App. 259, 198 P. 822; Johnson v. Pease, 126 Wash. 163, 217 P. 1005; 19 Notre Dame Law R. 365; or official and laborer, Devney v. City of Boston, 223 Mass. 270, 111 N.E. 788, holding that employees or laborers come under the acts, while officials do not. Various other tests have been applied, but none appear exclusive or complete. This court said in State v. Ash, supra, that the means of compensation, whether by the payment of wages or a salary *might* be one test, with fluctuation in tenure of employment another. State v. Angle, 54 Ariz. 13, 91 P. 2d 705, followed. Both cases leaned heavily on the character of the work which the employees under question performed. Asher v. City of Portland, 133 Or. 41, 284 P. 586, and Oliver v. Macon Hardware Co., 98 Ga. 249, 25 S.E. 403, 58 Am.St.Rep. 300, followed the latter test. Other courts have held that the taking of an oath places the man in the classification of an official and so not subject to the act. Albee v. Weinberger, 69 Or. 331, 138 P. 859. Whether or not the working contract is terminable at will has been used by others. Devney v. City of Boston, supra; Albee v. Weinberger, supra. Other cases make no

attempt to use tests but simply exclude firemen and policemen from the act in question. Swisher v. United States, 57 Ct.Cl. 123; Danielson v. City of Bakersfield, 184 Cal. 262, 193 P. 242.

Clearly if the duties are supervisory the man cannot come under such a classification. In the stipulation referred to above the assistant fire chief, the deputy fire chief, and the captains are specifically required to fulfill supervisory positions and to direct the men under them. These men could in no sense be termed "laborers, workmen, mechanics." The firemen and engineers are each required to have education equivalent to completion of the twelfth grade; they must have training and knowledge of modern fire-fighting methods; they must be able to operate inhalators and other resuscitating equipment; they must be thoroughly familiar with the city, its geography, the construction and location of its buildings; they must be able to meet the public and get along with their fellow employees. They are experts trained for one purpose—to preserve and protect life and property from the menace of fire. These public guardians were not intended to come under the provisions of the charter.

Plaintiffs themselves are uncertain of their classification. Their complaint, brought under the statute, alleged they were in the class of "any person doing manual or mechanical labor." At the trial they amended their complaint with the further allegation that Sec. 5 of Chap. XIX of the City Charter was in effect during all the times mentioned in the complaint. The charter provides in part "that 8 hours and no more shall constitute a lawful day's work for all laborers, workmen, mechanics, or other persons, employed by or on behalf of the city."

There being no transcript of evidence before us, and the "Findings" of the court being narrowed down to the statement that plaintiffs came under the charter provisions, supra, we assume, because the original complaint alleged plaintiffs came within the statute and the answer denied that they did, that the case was actually tried on that theory (for there is nothing in the record to the contrary), and in view of the court's finding, we come to the inescapable conclusion that the court gave judgment to the plaintiffs on the theory that they were "laborers, workmen, mechanics."

Plaintiffs in this appeal now take the position that they are not "laborers, workmen, mechanics" but come under the words "or other persons" in the charter. It ill behooves plaintiffs, having received judgment in the lower court on one theory, to seek affirmance by this court on an entirely different theory.

The constitution provides that "Eight hours and no more, shall constitute a lawful day's work in all employment by, or on behalf of, the state or any political sub-

division of the state." The legislature and charter-framers narrowed the field to certain classes of people. This they had a right to do. Arizona Eastern R. Co. v. Matthews, supra. Had they intended to include all persons in public employment, they would have said so as did the constitution; also had they intended that the words "or other persons" should include all employees, they would not have enumerated a particular class. They restricted and implemented the constitution for the benefit of a certain class by enumerating that class. Until the statute or charter provides for overtime pay or penalties for violation of the constitutional provision, those benefits can be had only by those persons falling within the class.

We hold that a fireman is not "a person doing manual or mechanical labor" as set out in the statute, nor does he come within the class of "laborers, workmen, mechanics" as set out in the charter. We further hold that the doctrine ejusdem generis applies as heretofore set out, and that the words "or other persons" in the charter do not apply to plaintiffs.

Judgment reversed.

UDALL, STANFORD, and PHELPS, JJ., concur.

LA PRADE, C. J., not participating.