[No. 20638. *En Banc.* July 12, 1927.]

THE STATE OF WASHINGTON, *on the Relation of Bloedel-Donovan Lumber Mills, Appellant,* v. C. V. SAVIDGE, *as Commissioner, Respondent.*[1]

[1] PUBLIC LANDS (91)—HARBOR AREAS—LEASE—WHARVES AND DOCKS—"OTHER STRUCTURES"—STATUTES—CONSTRUCTION. Under Const., Art. 15, § 1, forbidding the sale of harbor areas and forever reserving the same "for landings, wharves, streets and other conveniences of navigation and commerce," and Id., § 2, authorizing the legislature to "provide by general laws for the leasing of the right to build and maintain wharves, docks, and other structures" upon such harbor areas, the term "other structures" is not governed by the rule of *ejusdem generis;* since the particular words "wharves and docks" exhaust the genus and are all conclusive; hence the constitution does not prohibit the leasing of harbor area for an industrial plant to be used in connection with docks and wharves, where only twenty per cent of the area leased is to be devoted to manufacturing purposes and the rights of the public in navigation are not prejudiced and can be safeguarded by the terms of the lease (over-ruling *State ex rel. Denny v. Bridges,* 19 Wash. 44, 52 Pac. 326, 40 L. R. A. 593).

[2] APPEAL (478)—COURTS (35)—RULE OF DECISION—PREVIOUS DECISIONS AS CONTROLLING. The doctrine of *stare decisis* should

[1]Reported in 258 Pac. 1.

not be applied when, to follow an error into which the court fell when the great importance of the question was unforeseen, would be to overthrow principle and do injustice.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered April 27, 1927, upon findings in favor of the defendant, in an action for mandamus, tried to the court. Reversed.

*Kerr, McCord & Ivey,* for appellant.

*The Attorney General* and *L. B. Donley, Assistant,* for respondent.

FRENCH, J.—This action was commenced in the superior court for Thurston county, the appellant making application for a writ of mandate to require the respondent to permit improvements upon certain of the harbor area situated in front of the city of Bellingham, so as to allow the construction and operation of a pulp and paper mill. Proper application was made to the commissioner, to which application were attached maps, drawings, and specifications of the proposed improvement. It appears from the plans that the greater portion of the proposed pulp and paper mill will be built upon tidelands, but that, due to the fact that the inner harbor line in the city of Bellingham is in many places practically contiguous with the line of low tide, some portion of the paper mill proposed to be built must of necessity be constructed upon the harbor area. It appears also that the improvement proposed upon the harbor area will have railroad tracks, dockage and warehouse facilities. This application was refused by the commissioner, his reason being, as we are informed, that the issuing of a lease for such purpose is prohibited by §§ 1 and 2 of Article XV. of the constitution of the state of Washington, which sections read as follows:

"Sec. 1. The legislature shall provide for the appointment of a commission whose duty it shall be to locate and establish harbor lines in the navigable waters of all harbors, estuaries, bays, and inlets of this state, wherever such navigable waters lie within or in front of the corporate limits of any city, or within one mile thereof on either side. The state shall never give, sell, or lease to any private person, corporation or association any rights whatever in the waters beyond such harbor lines, nor shall any of the area lying between any harbor line and the line of ordinary high tide, and within not less than fifty feet nor more than six hundred feet of such harbor line (as the commission shall determine) be sold or granted by the state, nor its rights to control the same relinquished, but such area shall be forever reserved for landings, wharves, streets, and other conveniences of navigation and commerce.

"Sec. 2. The legislature shall provide general laws for the leasing of the right to build and maintain wharves, docks, and other structures, upon the areas mentioned in section 1 of this article, but no lease shall be made for any term longer than thirty years, or the legislature may provide by general laws for the building and maintenance upon such area wharves, docks, and other structures."

The facts are fully set out in the application filed herein, as well as in the pleadings, and are admitted by the demurrer of respondent, so that a proper determination of this case requires a construction of these sections of our constitution above quoted.

It will be noticed that the first section of Article XV provides for the establishment of harbor lines in the navigable waters of all harbors in the immediate vicinity of the corporate limits of any city, and it provides that no rights shall be given to any person in any of the waters beyond the harbor lines. It further provides that none of the land or area between the harbor line and the line of high tide shall be sold or granted by the state, but that such area shall be re-

served for landings, wharves, streets and other conveniences of navigation and commerce. By § 2 it is provided that the legislature shall provide general laws for the leasing of the right to build and maintain "wharves, docks and other structures" upon the area mentioned in § 1 of this Article and provides that no lease shall be made for any term longer than thirty years.

The legislature, by ch. 171, Laws of 1923, p. 546; Rem. 1927 Sup., § 8011-1, passed a comprehensive act covering the leasing of harbor areas and tidelands belonging to the state, and in such act it is provided that

"Application for lease of harbor areas shall be accompanied by such plans, drawings and other data concerning the proposed wharves, docks and other structures or improvements therein as the commissioner shall require. Every lease of harbor area shall provide that the wharves, docks, or other conveniences of navigation and commerce adequate for the public needs, to be specified in such lease, shall be constructed within such time as may be fixed in each case by the commissioner,"

and it is conceded that the applicant in the instant case has agreed to, and in every way will, comply with all of the provisions of said act, including § 7 of such act, which provides:

"The state of Washington shall ever retain and does hereby reserve the right to regulate the rates of wharfage, dockage and other tolls to be imposed by the lessee or his assigns upon commerce for any of the purposes for which the leased area may be used and the right to prevent extortion and discrimination in such use thereof." [Rem. 1927 Sup., § 8011-7.]

[1] So that the sole and only question in this case is, Will the use of a portion of the proposed wharf and dock for manufacturing purposes render the lease void and subject to cancellation, and is the commissioner

justified in refusing the modification of the existing lease so as to enable it to be thus used?

It should be remembered that petitioner does not seek to avoid the performance of its public duty to serve the public in handling freight and passengers to the extent of the public requirements. It only seeks to have the court declare lawful the use of the proposed improvements for the finishing of the manufacture of paper products upon a small portion of the structure, subject to the paramount duty to permit the use of the structure for shipping purposes. Only twenty per cent of the length of the structure is to be devoted to the use of manufacturing, and such limited use is subordinate to the use of the dock for shipping purposes. Section 2 of the article of the constitution above quoted expressly commands the legislature to provide general laws for the "leasing of the right to build and maintain wharves, docks and other structures." It is the contention of respondent that the words "and other structures" must be construed in accordance with the rule of *ejusdem generis*. In Lewis' Sutherland Statutory Construction (2d ed.), § 437, the rule is stated that:

"If the particular words exhaust a whole genus, the general words must refer to some larger genus. 'If the particular words exhaust the genus, there is nothing *ejusdem generis* left, and in such case we must give the general words a meaning outside of the class indicated by the particular words or we must say that they are meaningless, and thereby sacrifice the general to preserve the particular words. In that case the rule would defeat its own purpose.' The general words are not to be rejected, and the maxim *ejusdem generis* must yield to the maxim that every part of a statute should be upheld and given its appropriate effect, if possible.

"The doctrine of *ejusdem generis* is, however, only a rule of construction, and like all rules, is resorted to

only as an aid to the courts in arriving at the true intent of the lawmaker. . . . No rules of construction, however, can be permitted to override the fundamental principle underlying all rules which requires that all words contained within a statute must, if possible, be given their ordinary meaning, and that the intention of the lawmakers must be gathered from the language employed in the light of the context and of the subject-matter to which it is applied, . . . By this we do not mean that where the ordinary meaning of the language employed would lead to an absurdity, or inflict great injustice, the ordinary meaning of the words should not be restricted or expanded, if necessary to avoid an absurdity or an injustice; but this is only another way of stating that courts cannot assume that the lawmaker really intended to enact either absurd or unjust laws." *Nephi Plaster & Manufacturing Co. v. Jaub County,* 33 Utah 114, 93 Pac. 53.

In accordance with the above rule, it seems to us that there is no room for the application of the doctrine of *ejusdem generis,* for the reason that wharves and docks are all-inclusive, and there are no other similar or like structures. So that the words "other structures" should not be limited by the doctrine of *ejusdem generis.*

Viewed in the light of the experience of a third of a century, operating thereunder leads to the inevitable conclusion that it was the purpose of the framers of our constitution to at all times protect navigation to such an extent that the public would be properly served, commerce encouraged, and industry satisfied. It is admitted by the demurrer to the petition that, in the waterfront cities of this state, less than five per cent of the harbor areas are being used for wharves and docks, and certainly it cannot be within the meaning of our constitution that the other ninety-five per cent shall remain wholly idle. It is manifest that, unless portions of the harbor areas can be used otherwise

than for strictly wharves and docks, the greater portion of the water-front of our tide-water cities must forever remain idle.

Again, it should be remembered that commerce has to do with the distribution of commodities; and manufacturing has to do with the production of commodities. The terms "manufacture" and "commerce" have been quite generally linked together by all writers on finance and economics. Indeed, except in a very limited way, without commerce there could be no manufacturing, and it is equally true that without manufacturing there could be no commerce.

Section 2 of that portion of the constitution above quoted specifically provides that "no lease shall be made for any term longer than thirty years." It is at once apparent that the various leases of harbor area, being made from time to time and for periods in no event longer than thirty years, will expire at irregular intervals. These areas can in no event be sold, and the state can in no event lose title thereto or control thereover. It seems to us that the reasonable construction is, that it was the intention of the framers of our constitution that, by retaining title, the state of Washington will always be in position where, by proper legislation, by refusing to renew these leases in case the occasion should seem to require, or by otherwise exercising the authority and domain expressly granted, the waterfront areas of this state should always be maintained for the use and benefit of all of the people of the state.

In arriving at this conclusion we have carefully considered the case of *State ex rel. Denny v. Bridges,* 19 Wash. 44, 52 Pac. 326, 40 L. R. A. 593. It must, however, be remembered that the decision in that case was rendered more than twenty-nine years ago, without in any way considering the questions in the light of all

the facts as alleged in the petition in this case, all of which are admitted by demurrer.

In the case of *State ex rel. Hulme v. Grays Harbor & Puget Sound R. Co.*, 54 Wash. 530, 103 Pac. 809, in referring to the above-quoted sections of our state constitution, this court said:

"Commerce by land and commerce by water are so intimately correlated that it was evidently not the intention of the framers of the constitution to use the words "navigation and commerce" in a restrictive sense. We should rather impute to them the intention to use the words in that broader sense which includes commerce in all its ramifications, to the end that the development of the state's resources should not be hampered. The sparsely-settled and undeveloped condition of the state when these words were penned would seem to emphasize the view that the state did not intend to impose a limitation upon itself which would embarrass its progress and development. Rather we should assume that the words were used in recognition of the pressing need at that time for larger transportation facilities, both by land and water."

The experience of the past thirty years discloses that, for all practical purposes, the state can control the harbor areas and see to it that such harbor areas are used for wharves and docks sufficient to meet all public requirements. Port districts have been organized so extensively and their scope and field of endeavor is so almost universal in the waterfront areas that the public generally, through the operation of their own created public corporations, have forever abrogated the possibility of those evils that were pointed out in the *Denny* case, *supra*.

[2] We are not unmindful of the doctrine of *stare decisis,* but in the case of *Schramm v. Steele,* 97 Wash. 309, 166 Pac. 634, this court quoted with approval the following:

" 'Much as we respect the principle of *stare decisis*, we cannot yield to it when to yield is to overthrow principle and do injustice. Reluctant as we are to depart from former decisions we cannot yield to them, if, in yielding, we perpetuate error and sacrifice principle. We have thought it wisest to overrule outright rather than to evade, as is often done, by an attempt to distinguish where distinction there is none.' *Paul v. Davis*, 100 Ind. 418.''

The language of Mr. Chief Justice Taney as expressed in *The Genesee Chief*, 12 How. (U. S.) 443, it seems to us, is very applicable to the doctrine of *stare decisis* as applied to this case:

"It is the decision in the case of the *Thomas Jefferson* which mainly embarrasses the court in the present inquiry. We are sensible of the great weight to which it is entitled. But at the same time we are convinced that, if we follow it, we follow an erroneous decision into which the court fell, when the great importance of the question as it now presents itself could not be foreseen; and the subject did not therefore receive that deliberate consideration which at this time would have been given to it by the eminent men who presided here when that case was decided."

Likewise, in the language of Mr. Chief Justice Fuller, in the case of *Pollock v. Farmers' Loan & Trust Co.*, 157 U. S. 429:

"Manifestly, as this court is clothed with the power, and entrusted with the duty, to maintain the fundamental law of the Constitution, the discharge of that duty requires it not to extend any decision upon a constitutional question if it is convinced that error in principle might supervene."

The case of *State ex rel. Denny v. Bridges*, 19 Wash. 44, 52 Pac. 326, 40 L. R. A. 593, is therefore expressly overruled.

We hold that, in a situation such as this, it is the duty of the commissioner to grant the application of

the petitioner for a modification of the character of improvements and to permit the improvement to be made in accordance with the plans attached to the application.

Judgment reversed.

MACKINTOSH, C. J., MAIN, and PARKER, JJ., concur.

MITCHELL, J. (concurring)—I concur in the result as the proposed lease seems to substantially protect navigation and commerce and reserves to the state the right to regulate rates of wharfage, dockage and other tolls imposed upon commerce.

TOLMAN and HOLCOMB, JJ., concur with MITCHELL, J.