[Civil No. 3190.   Filed May 5, 1932.]

[10 Pac. (2d) 1046.]

THE INDUSTRIAL COMMISSION OF ARIZONA, Petitioner, v. ARIZONA STATE HIGHWAY COMMISSION, T. S. O'CONNELL, State Engineer, ANA FROHMILLER, State Auditor, and K. BERRY PETERSON, Attorney General of Arizona, Respondents.

164

Mr. Burt Clingan (Messrs. Favour & Baker and Mr. Albert Mackenzie, of Counsel), for Petitioner.

Honorable K. Berry Peterson, Attorney General, and Mr. Riney B. Salmon, Assistant Attorney General, for Respondents.

LOCKWOOD, J.—This is an action by the Industrial Commission of the state of Arizona, hereinafter called petitioner, for the purpose of determining whether or not it is the duty of the Arizona State Highway Commission, hereinafter called the commission, to provide from the highway fund for the premiums necessary to be paid the petitioner on compensation insurance which the law requires the latter to carry on the employees of the commission, or whether such premium can be paid only by an appropriation made by the legislature in the general appropriation bill. The suit is in effect a friendly one between two departments of the state to determine just how certain necessary expenses of the state shall be paid.

There are three questions for our determination: First, should the insurance premiums in question be paid out of the highway fund or by appropriations made by the legislature in the biennial appropriation bill? second, if such premiums should be paid from the highway fund, what is the proper procedure for petitioner to follow in securing them? and, third, if the highway fund is responsible for the payments, and a method is provided by law to compel such payments to be made, what is the amount due to petitioner? Upon the answer to the first question will depend the necessity of taking up the others.

This question is regulated entirely by the Arizona statutes, and is a matter of first impression in this state, so there are no adjudicated cases directly in point. The only assistance which we can obtain from the decisions of either this or other jurisdictions is as to the rules of construction to be used in interpreting our statutes bearing on the subject. The funda-

mental one is that it is the duty of the court to ascertain, if possible, the intent of the legislature. Of course in so doing we should follow the ordinary canons of statutory construction, but they are merely means to the ultimate end. *Gideon* v. *St. Charles,* 16 Ariz. 435, 146 Pac. 925; *Deyo* v. *Arizona Grading & Const. Co.,* 18 Ariz. 149, L. R. A. 1916E 1257, 157 Pac. 371; *Hicks* v. *Krigbaum,* 13 Ariz. 237, 108 Pac. 482.

In our opinion, the most important canon which applies to the present situation is that, where there are both a general and a special statute covering a certain subject, they are, if possible, to be construed so as to harmonize and give effect to both. *Gideon* v. *St. Charles, supra.* And in such circumstances the special statute is, in the absence of some reason to the contrary, generally held to be an exception to the terms of the general. *Rodger's* v. *United States,* 185 U. S. 84, 46 L. Ed. 816, 22 Sup. Ct. Rep. 582; *Crane* v. *Reeder,* 22 Mich. 322.

The second canon is that the court should take into consideration the occasion and necessity of the two statutes and the result to be reached thereby. *Hawkins* v. *Bare & Carter,* 63 W. Va. 431, 60 S. E. 391; *State ex rel. Loftin* v. *McMillan,* 55 Fla. 246, 45 South. 882.

In order that the situation may be understood, it is best to discuss briefly the history of the legislation whose interpretation is in question. Chapter 83, Session Laws of 1925, commonly known as the Workmen's Compensation Act, was approved by the Governor on March 25, 1925. It, however, did not become a law until after the approval by the people of chapter 82 of the same Session Laws, which was an amendment to section 8, article 18, of the Constitution. This amendment and the Compensation Act above cited established a general system of workmen's compensation in Arizona which covered, not merely work-

men in private employment, but also many of those engaged in public service.

The act provided, among other things, the method whereby the compensation to be paid to injured workmen should be collected, and, so far as public employees are concerned, regulated the matter by sections 53 and 54 of the act, which read as follows:

"Section 53. *Insurance by County, City, Town, Municipal Corporation, or School District.* The State and each county, city, town, municipal corporation or school district which is liable to its employees for compensation must insure in the state compensation fund.

"Section 54. . . . The State Auditor is hereby authorized to draw his warrant for such premiums as may be due from the state in accordance with the terms hereof in favor of the Treasurer for the benefit of the state compensation fund and the Treasurer shall at once pay said warrant out of the General Fund and the appropriation made in Section 98 of this Act, until provision shall be made for such purpose in the general appropriation bill and then out of the appropriation for the state for the state compensation fund authorized in the general appropriation bill and apply the proceeds thereof to the credit of the state compensation fund. The legislature shall make provision in the general appropriation bill for the State of Arizona for the state compensation fund. . . ."

In pursuance of these sections the legislature at its regular session in 1927 (Act 1927, chap. 95, section 1, subd. 33) appropriated the sum of $190,000 "for the State Auditor to pay to the Industrial Commission of Arizona, insurance premiums for Accident Benefit Insurance and Compensation for State Employees." This covered the period from the time the act became effective up to June 30, 1929.

In the meantime, the legislature became dissatisfied with the manner in which the highway department was being operated, and after a long and strenuous fight adopted chapter 2, Fourth Special Session of the

Eighth Legislature, commonly called "The Highway Code." In that chapter the highway department was created, and the law carefully and specifically set up the manner in which funds should be raised for the department, and how they should be expended.

The Highway Code provides that the highway commission created therein shall on or before the first day of June of each year make a written budget, and that "said budget shall thereupon become and remain the budget and limit of expenditures for the purposes of this act for the next ensuing fiscal year" (subchapter IV, § 12, Highway Code 1927), and that no expenditures for any purpose shall be made by the commission in excess of the amount budgeted for each item during the fiscal year for which the budget is adopted except as the Code provides for transfers to be made from one budget account to another. Subchapter IV, §§ 13 and 14, Highway Code 1927.

Among the subjects for which the highway fund may be budgeted is "to pay the premiums upon authorized indemnity bonds, and upon compensation insurance under the Workmen's Compensation Act of the State of Arizona." Subchapter IV, § 8, subd. h, Highway Code 1927. Had no further legislation occurred, we think it is clear that the provisions of the Highway Code on this subject, being the latest expression of the legislative will, would necessarily prevail, and there can be no question that the legislature intended thereby that the new highway fund should assume the burden of paying the insurance premiums on workmen's compensation for employees of the commission. In the meantime, however, a general revision of the entire statutory law of Arizona was under way, which was finally adopted by the legislature on January 5, 1929, and became effective July 1, 1929. Among the provisions of this Code were sections 1425 and 1577. The first-named section was in

effect a simplification of sections 53 and 54 of the original Workmen's Compensation Act, and, as far as material to this case reads as follows: "The state and each county, city, town, municipal corporation or school district which is liable to its employees for compensation must insure in the state compensation fund. . . . The state auditor shall draw his warrant for such premiums as may be due from the state in favor of the treasurer for the benefit of the state compensation fund and the treasurer shall at once pay said warrant out of the general fund and the appropriation made therefor in the general appropriation bill for the state compensation fund," while section 1577 contains a clause practically identical with subdivision h of section 8, subchapter 4, *supra.*

The ninth legislature at its regular session in 1929 (Session Laws 1929, chap. 104, § 1, subd. 33) again appropriated $100,000 for "the state auditor to pay to the Industrial Commission of Arizona insurance premiums for Accident Benefit Insurance and Compensation for State Employees" for the biennium beginning July 1, 1929, and ending June 30, 1931.

The tenth legislature at its regular session in 1931 (Session Laws 1931, chap. 113, § 1) adopted as part of the general appropriation bill subdivision 40, which reads as follows:

"Subdivision 40. *Insurance Premiums, State Employees.*

|  | For the 20th Fiscal Year | For the 21st Fiscal Year |
|---|---|---|
| For Premiums, exclusive of State Highway Department | $22,733.40 | $23,132.40 |
| Total Appropriation | $22,733.40 | $23,132.40" |

—and made no appropriation for insurance premiums in the state highway department, but did not amend sections 1425 and 1577, subdivision 6, *supra.*

Taking into consideration the entire history of the legislation in regard to the premiums for state employees in general, and the highway department in

particular, we are strongly impressed that, judging by the usual rules of statutory construction, it was the intention of the legislature that from and after the adoption of the Highway Code the cost of compensation insurance for state employees in the highway department should be borne as part of the necessary expenses of running such department, and not by the general fund of the state through the general appropriation bill. Such being the case, it was the duty of the commission, under subdivision h of section 8 of subchapter 4 of the Code, when it prepared its annual budget, to provide therein for a sufficient amount to pay insurance premiums on compensation insurance carried for the benefit of its employees by the petitioner.

If it has failed to do this, as alleged by the petition, what is the remedy? *Mandamus,* of course, lies to enforce the performance of a duty which the law specifically imposes upon some officer, arising from his occupancy of an office, trust or station. Section 4396, Rev. Code 1928. And this court has jurisdiction of such an action against all state officers. Section 4, art. 6, Constitution of Arizona. That the highway commissioners are state officers cannot be questioned. *Winsor* v. *Hunt,* 29 Ariz. 504, 243 Pac. 407. Nor under our interpretation of the statutes above set forth is there any doubt that it was and is their duty to budget such sums as are necessary to pay compensation insurance premiums on their employees. There is, however, equally no question that they are prohibited from expending any funds not budgeted for, except when a transfer is made from an item already budgeted. These transfers are only authorized under the provisions of section 1582, Revised Code of 1928, which reads as follows:

"1582. *When transfer of budget accounts authorized.* The commission, by an affirmative vote entered upon its minutes, may certify to the auditor and

treasurer transfer of amounts from *one budget account to any other budget account* in the following cases: 1. In the event of an insufficiency of the funds in the construction account of any particular project to fully complete the same in order to receive all funds to be contributed thereto through the cooperation of the United States, county or other source of such revenue; 2. In the event of casualty requiring unexpected expenditures of money for reconstruction or maintenance purposes, limited to unexpected destruction of highways, bridges or other structures; or, 3. When a credit remains to any budget item or account after the completion of the work and the complete discharge and satisfaction of all liabilities incurred on that account, or when a credit remains to any budget item by reason of the abandonment of the same.'' (Italics ours.)

It is obvious that, if no budget account has been opened by the commission for insurance premiums, a transfer cannot be made under the provisions of this section.

Is there, then, any remedy available? We think there is, and that we have specifically set out what should be done when a public body, whose duty it is to budget certain items of expenditure, fails to do so. The party claiming the item should be budgeted may apply to the proper court for a writ of *mandamus* directing the budgeting body to include the item in question in its next official budget. *Bank of Lowell* v. *Cox,* 35 Ariz. 403, 279 Pac. 257; *Fullen* v. *Calhoun,* 39 Ariz. 40, 3 Pac. (2d) 786.

It is true that in this case petitioner did not ask for this specific relief, but in the oral argument it was agreed between parties that, if this court determined that it was the duty of the highway department to pay the amount in question and to include it in its next budget, under the general prayer for relief, such an order might be made without the necessity of amending the pleadings.

There remains only the third question as to how much should be budgeted for the fiscal year beginning July 1, 1932. Obviously the amount is whatever is necessary, under the rules of petitioner in regard to insurance premiums for public employees, to pay such premiums for all employees of the highway department now due and to become due petitioner up to the end of the fiscal year ending June 30, 1932, and all sums necessary to pay such premiums for the fiscal year beginning July 1, 1932. Apparently the parties have not agreed upon what this amount is.

This court is not in a position to sit as a trier of fact. It is therefore ordered that, if by May 20, 1932, the highway commission and the petitioner herein file in this court a stipulation as to the amount of money necessary to budget for the fiscal year beginning July 1, 1932, and ending June 30, 1933, for past and future premiums on compensation insurance due and to become due petitioner from the highway department in accordance with the principles laid down in this opinion, a peremptory writ of *mandamus* will issue commanding the highway commission to include in their budget for the next fiscal year the amount so stipulated, and that upon a failure to file such stipulation this case will be remanded to the superior court of Maricopa county for the purpose of determining the amount so due as above, and a certification of such amount to this court, whereupon the peremptory writ will issue, as aforesaid.

McALISTER, C. J., and ROSS, J., concur.