[No. 25810. Department One. October 17, 1935.]

THE STATE OF WASHINGTON, *on the Relation of L. A. Conner Company, Plaintiff*, v. THE SUPERIOR COURT FOR SKAGIT COUNTY *et al., Respondents.*[1]

[1]Reported in 50 P. (2d) 527.

128

*J. L. Corrigan,* for relator.

*Verne Branigan* and *Welts & Welts,* for respondents.

STEINERT, J.—Relator filed its petition in this court seeking the review of an order of public necessity entered by the respondent superior court in a condemnation proceeding. In response to an order to show cause issued by this court, respondent made full return of the proceedings had in the condemnation case. The matter is now before us on the petition and return.

The facts are not in dispute. They are presented to us in the form of findings made by the court in the condemnation proceedings. The substance of the findings, stripped of their formality, discloses the following state of facts:

Drainage district No. 15 of Skagit county, duly incorporated under the laws of Washington, embraces within its boundaries 9,260 acres of improved farm land, of which about eighty per cent are under cultivation. The lands within the district are at present artificially drained by a system of ditches and natural sloughs, particularly Sullivan slough, emptying into the north fork of Skagit river and Skagit bay, an arm of Puget Sound; automatic gates and power pumps are employed in the drainage operations. Of late, the existing system of drainage used by the district has proven wholly inadequate and insufficient, with the result that, at certain seasons of the year, the lands within the district have been covered with water, and,

as a consequence, crops have been damaged, farms have been made unprofitable, and an unsanitary and unhealthful condition has been created.

The flooded condition of the drains and lands is due to the deposit of sediment forming bars in the north fork of the Skagit river, in and near the outlets of the present drainage system. The condition is further augmented by the fact that there is a dam across Sullivan slough at a point about one and one-half miles from its outlet into Skagit river. This leaves a dead end to the slough, which also fills with silt and interferes with free drainage. The cost of permanently remedying these conditions is utterly beyond the financial ability of the district and is, in fact, prohibitive. Under these circumstances, a new and different outlet for the drainage system is imperative.

To the west of Sullivan slough, and opposite the town of La Conner, is Swinomish slough, a body of water which connects Skagit bay and Padilla bay, also an arm of Puget Sound. Swinomish slough has, at all times, tidal waters standing and running therein and has been recognized by the government of the United States as a watercourse. Appropriations have heretofore been made by the Federal government for keeping the slough open by dredging operations.

Swinomish slough furnishes the means of a natural, adequate, and sufficient outlet for the drainage of the waters within the district at a reasonable cost. The adoption and completion of such improvement will, on the one hand, increase the value of the lands within the district and contribute to the public health, convenience, and welfare of its inhabitants, and on the other hand, will in no way interfere with navigation, commerce, or the construction of landings or wharves in connection therewith.

A somewhat peculiar condition exists in Swinomish slough with respect to an immediate connection between it and the proposed improvement. It is this condition which the condemnation proceeding sought, among other things, to overcome, and which is the basis of relator's objections thereto.

In 1893, the commissioner of public lands, acting pursuant to Art. XV, § 1, of the state constitution and the statutes of the state, surveyed Swinomish slough and located and established harbor lines within the navigable waters thereof. As shown by the survey, the inner harbor line then fell within the navigable tide waters of the slough between the line of ordinary high tide and the outer harbor line. Since that time, however, through the action of the water and the deposit of silt, a land area has been formed along the east side of the slough, so that now there is an accretion to the east bank, of approximately twenty-five to fifty feet in width and several feet in height, in the form of upland above the line of ordinary high tide and between the inner harbor line, as originally traced, and the east margin of the slough as it now exists. Thus, the inner harbor line, which originally fell within navigable water, is now in part actually on dry land.

This accretion of land, which, in the vicinity of the proposed connection, is vacant and unimproved, forms an obstruction to the prospective outlet to Swinomish slough and must be met either by the construction of a ditch through it or else by dredging portions of the accretion away. In either event, however, no structures of any kind will be placed in the harbor area, nor will the use of the right of way for drainage purposes in any way interfere with navigation or commerce.

Impelled by the necessities of present conditions

and beckoned by the opportunity afforded by Swino-mish slough, the district commenced proceedings to secure a right of way, seventy-five feet in width, for a ditch across the lands lying in the district and to obtain a connection between the terminus of its ditch and the waters of Swinomish slough. Without such connection, the remainder of the improvement would fail of its purpose.

Condemnation proceedings were accordingly begun, to which certain land owners in the district, including the relator, and also the state of Washington, were made parties. None of the land owners, with the exception of the relator, has made any objection to the securing of the right of way, and the state of Washington has no objection to the establishment of a proper connection between the terminus of the ditch and Swinomish slough. In fact, pursuant to previous negotiations between the district and the commissioner of public lands, the latter granted the district a permit to dredge out, excavate, and remove the earth, debris, piling, etc., forming the obstruction above mentioned at the inner harbor line, to the extent necessary to complete an outfall for the drainage of water from the lands into Swinomish slough, and in such manner as would in no way interfere with navigation or commerce.

Based upon these facts as found by the trial court, it was concluded and ordered that the use of the lands and premises that were to be condemned or otherwise acquired was a use of public necessity, and that the district should be permitted to acquire the same, subject to the requirement that the owners of such property should be compensated in the manner provided by law. To test the validity of the order of public necessity, this proceeding was brought in this court by the relator.

It will be noted that the only thing that the superior court has thus far done in the condemnation proceeding is the entering of an order of public necessity and use. With that fact in mind, it might be sufficient to say that, in our opinion, the facts as found by the court, and which are in no way attacked, fully support, and even compel, the conclusions drawn therefrom and the order based thereon. However, we shall go further and consider the specific contentions made by the relator.

It is first contended that the drainage district cannot legally acquire any interest in the harbor area. Article XV, § 1, of the state constitution is cited as authority for this contention. That article and section have reference to the locating and establishing of harbor lines in the navigable waters of all harbors, estuaries, bays and inlets of the state, and to the uses to be made of harbor areas. Quotation from § 1 is in part as follows:

"The state shall never give, sell or lease to any private person, corporation, or association any rights whatever in the waters beyond such harbor lines, nor shall any of the area lying between any harbor line and the line of ordinary high water, and within not less than fifty feet nor more than two thousand feet of such harbor line (as the commission shall determine) be sold or granted by the state, nor its right to control the same relinquished, but such area shall be forever reserved for landings, wharves, streets, and other conveniences of navigation and commerce."

The facts of this case do not come within the inhibition of this language of the constitution. No rights in the waters beyond the inner harbor line are sought to be acquired by the district, nor is the state selling or granting any part of the harbor area or relinquishing any of its paramount rights to control the same. To the contrary, all rights of the state, future as

well as present, are preserved; and, in fact, the facilities of navigation and commerce will be promoted by such dredging operations as the district proposes to make.

Two cases are cited by relator in support of its contention upon the point raised: *State ex rel. Denny v. Bridges,* 19 Wash. 44, 52 Pac. 326, 40 L. R. A. 593; and *State ex rel. Bloedel-Donovan Lumber Mills v. Savidge,* 144 Wash. 302, 258 Pac. 1.

The *Denny* case construed the language of §§ 1 and 2 of Article XV of the constitution and held that harbor areas were reserved for landings, wharves, streets, and other conveniences of navigation and commerce, and that commercial uses of harbor areas must be restricted to such as are aids to navigation. That case has no application to the present one, because the district is not seeking to erect any structures whatever within or upon the harbor area, but is seeking merely to have an obstruction to its outlet dredged away, an operation that will improve, and not retard, navigation. Moreover, aside from this, the *Denny* case has been expressly overruled by the second case cited by relator, so that now the uses to which harbor areas may be put have been somewhat broadened.

The other case, *State ex rel. Bloedel-Donovan Lumber Mills v. Savidge,* 144 Wash. 302, 258 Pac. 1, held that the constitution did not prohibit the leasing of a portion of a harbor area for an industrial plant to be used in connection with docks and wharves, where the rights of the public in navigation are in no way prejudiced and can be safeguarded by the terms of the lease. That case is an authority against, rather than for, the relator.

The relator next contends that the commissioner of public lands is wholly unauthorized by law to permit the dredging of obstructions from a harbor

area. In the first place, that is not a matter in which the relator is concerned. Its legal rights are not thereby affected, and even if they were, it would present only a question of the amount of damages to the relator, to be determined at the trial of the condemnation proceeding on its merits. Here, only the state and the public are concerned, and their rights have been fully safeguarded by the terms of the permit. In the second place, Rem. Rev. Stat., § 9603, [P. C. § 6523], authorizes the commissioner, when in his judgment the interests of commerce would be subserved thereby, to enter into a contract with other persons for the excavation of any waterway or waterways through any lands belonging to the state, under restrictions that are fully provided for in this case. The provisions of that statute are broad enough to cover the present situation.

The court committed no error in entering the order of public necessity and use. The order is therefore affirmed.

MITCHELL, TOLMAN, GERAGHTY, and BEALS, JJ., concur.