[Civil No. 4093.   Filed February 12, 1940.]

[99 Pac. (2d) 88.]

THE STATE OF ARIZONA ex Rel. JOE CON-
WAY, Attorney General of Said State, Appel-
lant, v. THE INDUSTRIAL COMMISSION OF
ARIZONA, Appellee.

Mr. Joe Conway, Attorney General, and Mr. Earl Anderson, Special Assistant Attorney General, for Appellant.

Mr. Charles L. Strouss and Mr. Howard Twitty, for Appellee.

McALISTER, J.—The State of Arizona, at the relation of its attorney general, Joe Conway, seeks by this action to recover from the industrial commission the sum of $232,761.82, which represents premiums for workmen's compensation insurance paid by the state board of public welfare out of moneys in the state welfare fund for a period of slightly more than four years, March, 1933, to May, 1937. The complaint contains five counts, each asking for the return of the amount alleged to have been illegally paid to the commission during a particular year. The trial resulted in a judgment for the commission and from it the state appeals.

The state board of public welfare, consisting of five members, was created by the eleventh legislature in March, 1933, and by it clothed with the power and duty of looking after the needs of those who, because of the depression then at its height, were unable to take care of themselves, and of initiating or approving work projects for the relief of the destitute unemployed. Chap. 35, Sess. Laws 1933. In subsections 9, 11 and 13 of section 3 of the act the board was specifically directed to do these things:

"To pay out of the funds appropriated or donated to the board, office expenses, salaries of employees and all other expenses incurred in carrying out the duties and powers herein set out subject to the approval of the governor. . . .

" . . . To receive, hold and expend, subject to the provisions of this act, money received by gift, donation or otherwise from private sources, from federal, state, county or municipal governments or agencies, or from any charitable association or institution. All money received under the provisions of this paragraph shall be paid into the state treasury to be maintained by the state treasurer in a fund known as 'State Public Welfare Fund.' "

"To act as the official agency for the state in any social welfare activity initiated by the federal government and to administer any state funds that may at any time be appropriated or made available for the relief of destitute or necessitous persons."

It appears from the agreed statement of facts upon which the case was submitted that between the 10th day of March and the 31st day of December, 1933, large sums of money were paid into the state welfare fund by the federal government, by the counties, and by the state tax commission out of moneys received from excise taxes collected under the provisions of the luxury tax law enacted by the eleventh legislature, which provided that

"ninety-six per cent of the gross receipts of the taxes levied by this act are hereby appropriated for the use of the board of public welfare."

Chapter 18, First Special Session, 1933. Pursuant to the authority conferred upon it by chapter 35, *supra,* the state welfare board put to work throughout the state in 1933 a large number of employees in the building and other trades, including both skilled and unskilled workers, all of them being employed in aid of the needy and unemployed. The industrial commission determined that the law required that all these employees be insured with it as state employees and, for the purpose of fixing the insurance rates and collecting the premiums, it classified these employees as "Class 0022 Civics" and demanded of the state welfare board that it pay compensation insurance premiums on them in the sum of $30,094.65, for the period March 10, 1933, to December 31, 1933. This sum was paid by the board out of the welfare fund and accepted by the industrial commission as premiums for workmen's compensation insurance and deposited by it with the state treasurer to the credit of the "State Compensation Fund" and the "Accident Benefit Fund," pursuant to the Workmen's Compensation Law. (Rev. Code 1928, sec. 1391 et seq.) It was, thereafter, administered in accordance with the provisions of the Workmen's Compensation Law, and at the end of the year 1933 the industrial commission determined, pursuant to the terms of that law, that no dividends could be paid.

The regular session of the thirteenth legislature repealed chapter 35, Session Laws of 1933, abolished the state board of public welfare, created in its stead the state board of social security and welfare, and directed that the records, files and equipment of the state board of public welfare be transferred to the

new board and that any unexpended balance of the old board should be available to the new to aid it in carrying out its duties. Chap. 69, Sess. Laws 1937.

In each of the other four counts similar facts are alleged, the only difference being in the amounts sought to be recovered for each of the years involved.

The assignments raise only one principal question and that is whether the state welfare board could legally use the funds appropriated or granted to it for relief purposes to pay the premiums for industrial insurance on those persons employed by it. Appellant contends that such payments were not within the purpose for which the welfare fund could be used and were, therefore, illegal, while appellee's position is that they were within that purpose and, hence, were lawfully made.

■ The contention of appellant is based upon the provisions of section 1425, Revised Code of 1928. That section requires the state to insure its employees in the state compensation fund and directs the auditor to furnish the industrial commission quarterly a true payroll, showing the total amount paid to employees subject to the Workmen's Compensation Law each month of the quarter, segregated in accordance with the requirements of the commission. It then provides that the auditor shall draw his warrant for such premiums as may be due in favor of the state treasurer for the benefit of the state compensation fund and requires the treasurer at once to

"pay said warrant out of the general fund and the appropriation made therefor in the general appropriation bill for the state compensation fund."

In view of these provisions appellant takes the position that the premiums should have been paid out of the general fund from the appropriation made therefor in the general appropriation bill enacted by the

eleventh legislature and that if no funds were appropriated therein for that purpose the auditor should have issued to the industrial commission a certificate of indebtedness for the amount of the premiums and reported the same to the legislature at its next session for payment. Appellee admits that the contention of the state is sound unless the payment of these premiums from the welfare fund is made legal by some special statute. However, it contends that the welfare act is such a statute and that it is clear from its terms that the legislature intended that the premiums for industrial insurance for state welfare workers should be paid from the welfare fund because that act not only makes the welfare board the official agency for the state in administering all its welfare activities and directs it to receive, hold and expend all money donated to it from federal, state, county or municipal governments or from private sources, but requires it to pay out of these donated and appropriated funds

"office expenses, salaries of employees and *all other expenses* incurred in carrying out the duties and powers herein set out." (Italics ours.)

With the exception of "office expenses" and "salaries of employees," the expression, "all other expenses," includes every expense incurred by the board in performing its duties and, since those persons put to work by the welfare board became state employees and the Workmen's Compensation Act imposed upon the state the duty of insuring its employees in the compensation fund, the premiums for this insurance constituted one of those "other expenses" that had to be met by the board before it could carry out the duties and powers imposed upon it, unless the legislature had provided some other method of taking care of this insurance.

■ Appellant's contention is that section 1425, *supra,* is such a provision but an examination of the general appropriation bills enacted since the passage of the welfare act discloses that not one dollar was appropriated therein for the welfare board and, in addition, that the appropriations made in those bills for compensation premiums covering this period show that the legislature did not intend that any portion of that sum should be used for premiums for insurance for those employed by the welfare board. For instance, the general appropriation bill in 1931 appropriated for the twentieth fiscal year, $22,733.40 and for the twenty-first year, $23,132.40; and in 1933 it appropriated for the same purpose, $12,000 each for the twenty-second and twenty-third fiscal years; and in 1935, $20,000 each for the twenty-fourth and twenty-fifth fiscal years. It will be observed that the appropriation for insurance premiums made in 1933 by the legislature that enacted the welfare act was $10,000 less than that made in 1931 before that act came into existence, so, if the eleventh and twelfth legislatures had intended that the appropriations made by them for premiums for compensation insurance should cover the premiums for those put to work under the welfare act, it should either have said so specifically or, at least, have made an appropriation sufficiently large to accomplish that purpose. But it did neither. The amount appropriated in 1933 for the twenty-second and twenty-third fiscal years, respectively, was only $12,000, or a total of $24,000 for the two years, while the premiums paid by the welfare board for 1933 and 1934 exceeded $143,000, and the amount appropriated in 1935 for the twenty-fourth and twenty-fifth fiscal years was only $20,000, respectively, or a total of $40,-000 for the two years, while the premiums paid by the welfare board for the years 1935 and 1936 were in

excess of $140,000. This fact alone, it occurs to us, is sufficient to show that the legislature could not have intended that the appropriations made in the general appropriation bill for insurance premiums for any of these years should be used to procure insurance for those working under the welfare board.

Appellant contends further, however, that even if the amount set aside in the general appropriation bill for this purpose was insufficient to take care of the premiums for insurance for relief workers, the industrial commission should have demanded of the state auditor certificates of indebtedness as provided in section 35, Revised Code of 1928, and have accepted them as payments for the premiums upon the theory that the legislature would take care of them at its next session. The commission would not have been justified in taking this risk because insurance, whether it be in the compensation fund or a private company, rests upon a business basis. Premiums must be paid in the one as well as the other, for neither can continue in business without it. And, in addition, it would in all probability have been one or two years before the legislature would again be in session and even then the commission would have had no assurance that they would have been paid. That body would have been its own judge as to whether they should have been paid from the general fund or otherwise.

And besides, practically all of the state's portion of the relief cost was taken care of by excise taxes. In fact, it was the necessity for aiding the needy and relieving the *ad valorem* taxpayer of this burden that led the legislature to pass the various acts of relief legislation, and it would hardly be in line with that purpose to require that premiums for insurance for

needy workers to the extent of several hundred thousand dollars be paid from the tax on property.

■ Appellant contends also that under the doctrine of *ejusdem generis* the words, "and all other expenses," should be construed to mean "all other office supplies" and not to include premiums for compensation insurance. This might be true if the particular words, "office expenses" and "salaries of employees" did not embrace all objects within their respective classes but where, as here, they do include and exhaust these objects, the general words, "all other expenses," include expenses other than those of "office expenses" or "salaries of employees," or they have no meaning at all, and where this is true the *ejusdem generis* rule does not apply. *Arizona Superior Min. Co.* v. *Anderson*, 33 Ariz. 64, 262 Pac. 489; *State ex rel. Bloedel-Donovan Lumber Mills* v. *Savidge*, 144 Wash. 302, 258 Pac. 1; *Burk* v. *Montana Power Co.*, 79 Mont. 52, 255 Pac. 337; Lewis' Sutherland Statutory Construction, vol. 2, 2d ed., sec. 437; 59 C. J., sec. 581, pp. 983, 984. It is also clear from the language itself that the legislature did not intend the general words, "all other expenses," to be limited to office expenses and salaries. If this had been the purpose of their use, the welfare board would have had no authority for many of the expenditures made by the board in providing work for the unemployed, such, for instance, as those made for equipment, transportation, or any of the other expenditures for relief.

■ The further contention is made that the use of the proceeds of the luxury tax from which most of the state relief funds came was governed by the provisions of chapter 18, Session Laws of the First Special Session, 1933, which created that tax, and by chapter 78, Session Laws of the twelfth legislature, which in 1935 replaced chapter 18. Section 7 of chapter 18

appropriated ninety-six per cent. of this tax to "the use of the board of public welfare" and section 2, article IV, chapter 78, after making small deductions from ninety-six per cent. of this tax, appropriated the remainder to

"the state board of public welfare to be used for the purpose of relief, relieving unemployment in the state and carrying out the objects set forth in chapter 35, Laws of the Eleventh Legislature, 1933, in regular session."

In both acts ninety-six per cent. of the receipts from the luxury tax was appropriated to the welfare board for its use in carrying out the purpose for which the welfare act was created, hence, the disposition of the tax made by these two acts is identical with that made by the welfare act itself.

It follows from the foregoing, we think, that the language of subsection 9 of section 3 of the welfare act is in reality a special act providing how relief funds raised by the luxury tax and by other methods shall be spent and that it constitutes an exception to the general provisions of section 1425. Thus interpreted, it bears the same relation to section 1425 that subsection 6 of section 1577, Revised Code of 1928, requiring the highway commission to pay premiums on compensation insurance under the Workmen's Compensation Act does, and in *Industrial Com.* v. *Arizona State Highway Com.*, 40 Ariz. 163, 10 Pac. (2d) 1046, it was held that that provision is special and constitutes an exception to section 1425.

In this case appellant relies entirely upon certain statements found in *State of Arizona ex rel. Frohmiller* v. *Moore*, 50 Ariz. 187, 70 Pac. (2d) 327. The language referred to does justify its position and if its use had been necessary to the conclusion reached and were still adhered to, it would call for a decision

in favor of the state. That action was one by the state asking this court to direct the state treasurer to place to the credit of the general fund certain moneys returned to the welfare board by the industrial commission as dividends or unused premiums. In 1935 the welfare board paid the commission $135,300.51 for premiums for insurance upon persons put to work for the state by it and at the end of the year this was found to be excessive by $53,083.46. The sole question was whether this excess should have been placed to the credit of the welfare fund or the general fund, and the court properly held that since the money had been paid out of the welfare fund it should be returned to that fund, and this was true whether it had been legally or illegally expended. The court stated, however, that the $53,083.46 could not legally be used to pay for premiums for insurance for relief workers employed by the welfare board but only for unemployment and welfare relief, and this idea, appellant contends, is controlling here. This statement was not necessary to the decision and the court, in refusing to permit the welfare board to intervene for the purpose of collecting $232,761.82 additional premiums paid by it during the four-year period, 1933 to 1937, stated that the question raised by the intervener should not be disposed of without full presentation and could not be considered in the absence of a necessary party, the industrial commission.

A careful consideration of the question has led us to the conclusion that money paid for premiums for insurance for persons put to work by the welfare board was a relief expenditure within the meaning of the expression, "all other expenses."

The judgment of the superior court is, therefore, affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.